## STEVENSON *v.* WOODHULL BROS.

*(Circuit Court, W. D. Texas. 1884.)*

PROMISSORY NOTE—TRANSFER TO ONE PARTNER—PAYMENT TO ANOTHER.

When a note payable to a partnership firm is indorsed by the firm in blank and transferred to one of the partners before maturity, the maker, if he has notice of the transfer, is not discharged of his liability to the transferee by payment of the amount of the note to another member of the firm.

TURNER, J. This suit is upon a promissory note made and executed by the defendants June 24, 1878, payable to Priest & Severance, or order, for the sum of $1,000, and due the fifteenth of November, 1878. This note was indorsed upon the back in blank by Priest & Severance. The legal effect of this blank indorsement is and was to make the note payable to the legal holder of the same; it transferred the interest of the firm of Priest & Severance to the legal holder. The note is not shown to have had any vice in it at the date of its execution; on the contrary, the evidence shows the same to have been given for a valuable consideration. Therefore, no defense could be set up against this note, either as against the original payees or any subsequent holder, except the one made here, viz., payment in whole or in part. It is not pretended that the indorsement was not made by one of the firm of Priest & Severance, nor is there any

·evidence showing when the blank indorsement was made, as matter of fact. In the absence of any proof, the law presumes the indorsement to have been made before maturity. If partners see fit to transfer their partnership property to an individual member of the firm, they have an undoubted right so to do, and certainly, as between themselves, they are bound by that act. The legal effect of this indorsement was to change the ownership of the same from Priest & Severance to the legal holder of the note, wherever that might be, and if it be true that Priest was the holder, and that the same was placed in his possession, the legal presumption would be that the firm had transferred their interest in the note to the individual member, who thus became the bearer or holder of the note. The law will not presume that an act that may lawfully be done was unlawful in the absence of proof. There is no evidence here that repels the legal presumption arising from the facts established that this note was transferred by the firm to Mr. Priest, when it is shown that Priest was the holder of the instrument. Severance is not produced as a witness, nor is there any evidence which shows that this legal presumption is not in accordance with the real facts of the case; in fact, the evidence shows that all the money that was paid, was paid to Priest, and no objection was made at the time, so far as the evidence shows. As I have stated, the partners may, if in the course of their business, transfer partnership property to an individual member of the firm, and none but the creditors of the firm have a right to complain of such act. The effect of such transfer is to divest all the other members of the firm of any property in the thing so conveyed, so far as the partners are concerned, and the title thereto actually passes to the individual member.

The question next arises, how does such a transfer of a promissory note, as in this case, affect the debtor? If the fact of such transfer were unknown to the debtor, and he paid to one of the members of the firm, who had transferred his interest to his copartner, such payment would unquestionably be a good payment. But suppose the debtor knew at the time he paid to the member who had sold that he had parted with all his interest in the note, and consequently knew that he had no more right to the money than a stranger, can it be insisted for a moment that such a transaction would deprive the true owner of his right to recover against the maker, such a rule would open the door to the grossest, fraud. The legel presumption then must be (and there is no proof to rebut it) that the firm had sold this note to Priest. As Priest is shown to have had possession, use, and control of the same, it follows, admitting all that is claimed by the defendant to be true, from all that appears, if the payment was made to Severance, and at the time of the payment Woodhull Bros. had notice that the note was transferred either to Priest or anybody else, the Woodhulls paid with their eyes open, because they had notice that the note had been transferred. The Woodhulls, as the

evidence shows, were cautious enough to take a bond of indemnity, protecting them against any recovery upon the note. The note was here in the bank, and Severance could not get control of the same. The bond taken by the defendants is not produced in evidence, and the presumption arises that if produced it would militate against them; but the fact that they took the bond shows that they were put upon their guard. Further than this, the defendant pleads that the payment was made by the delivery of sheep, and produces a receipt from O. Severance, dated October 30, 1878, which recites that defendants had paid that day to O. Severance the note in suit, and further shows that defendants received from Severance a bond of indemnity, to protect them in case the payment should turn out invalid at this time. October 30th there was a suit pending in the state court, and the defendants were garnishees; the writ of garnishment was served upon them the twenty-fourth of October, 1878, six days before they answered the same. On the first day of November, 1878, the next day after the date of the receipt, these defendants, or one of them, made answer that they had not paid this note, or any part thereof, and, further, that Priest had notified him by letter of the transfer of the note. It is a little strange, if they had paid this note after the garnishment was served, and but the day before the answer in garnishment was made, that he should have forgotten so important a transaction; such a presumption cannot be indulged in. He is not here to make any explanation, and I conlucde that he preferred to let the case rest as it is, rather than state here that he had in fact made the payment to Severance, allowing that Severance had a right to collect the note. If he thought Severance had a right to collect the note, he knew also that he had the right to control the note, and defendants had the right to have the same surrendered up to them. The note was not lost; on the contrary, it was in the bank here, and defendants knew it, and Severance could not control it. Defendants therefore acted at their peril, and it is a matter of no consequence whether J. E. Severance or O. Severance was the real partner with Priest. They had, however, notice in the most impressive form that J. E. Severance was the real partner, as they had been made parties to a suit wherein J. E. Severance sued Priest, claiming that he, J. E. Severance, was the partner of Priest, to whom the note was given. And the very note in question was a part of the matter in litigation, and if they then had any doubt about who it was that comprised the firm of Priest & Severance, to whom they had executed this very note, it does not appear here, and yet it seems that upon floating rumor and general understanding that O. Severance was the real partner, they took the hazard, as they say, of paying this very note to O. Severance.

The judgment is for the plaintiff, for the note and interest, cost of protest, and cost of suit, and defendants must look to their bond of indemnity for redress, if any they have.