

2014 DEC 22 AM 9: 03

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) | NO. 71737-5 |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| BART A. ROWLEY, SR., | ) ) | |
| Respondent. | ) ) | FILED: December 22, 2014 |

LEACH, J. — The Department of Labor and Industries (Department) appeals a trial court decision awarding Bart A. Rowley Sr. industrial insurance benefits and presents an issue of first impression. We must decide what burden of proof and standard of proof apply when the Department claims the felony payment bar of RCW 51.32.020 prevents a worker from receiving benefits for an injury sustained in the course of employment.

Because courts liberally construe the Industrial Insurance Act, Title 51 RCW, to provide coverage and defer to the Board of Industrial Insurance Appeals (Board) in its area of expertise, we adopt the Board's conclusion that the Department has the burden of proving the felony payment bar by clear, cogent, and convincing evidence. But because the trial court erroneously required a

laboratory test to establish a substance as a narcotic, we remand for further proceedings consistent with this opinion.

FACTS

Bart Rowley worked as a truck driver for 33 years and spent 6 years working for Joseph B. Anderson.[1] On August 14, 2008, Rowley signed into work at 7:30 a.m. Later that clear, dry morning, he inexplicably drove his tractor-trailer truck off an overpass on highway 599. The truck landed on the road below with the trailer on top of the cab. Paramedics took Rowley to the Harborview Hospital trauma center.

Kent Police Officer Donevan Dexheimer went to the Harborview Medical Center emergency room to investigate. Dexheimer, a certified drug recognition expert, had training to perform a 12-step drug influence evaluation. An emergency staff member told him about a "surprise" found in Rowley's pocket: a small plastic "baggie" with smiley faces on it. By the time Dexheimer arrived, hospital staff had placed Rowley's clothes in the trash. Staff also dumped the white substance in the baggie in the sink and placed the baggie in the trash. At Dexheimer's request, a nurse retrieved the baggie from the trash. The baggie was "in a trash bag, a large trash bag that contained several smaller garbage

---

[1] The employer on Department documents is listed as Craig Mungas Receiver for Jos (Sunset Machinery). Mungas was the court-appointed receiver for Joseph Anderson.

bags that contained Mr. Rowley's clothing." In the baggie, Dexheimer saw residue of a crystalline substance that from its packaging and appearance "looked to [him] like methamphetamine."

Dexheimer placed the unconscious Rowley under arrest for DUI (driving under the influence of an intoxicant). Dexheimer gave another nurse two vials to hold blood samples, which the nurse took from Rowley in Dexheimer's presence. Dexheimer labeled the samples and gave the vials and the baggie to Trooper Nicholas King. King performed a field test on the substance in the baggie and determined it was likely methamphetamine. Though the blood samples were sent to the state toxicology lab, the baggie was not. Subsequent toxicology testing of the blood samples revealed 0.88 milligrams per liter of methamphetamine.[2]

Rowley sustained extensive injuries, including a severed spinal cord. He remained in an induced coma for 40 days following the accident and has no memory of events from several days before the accident until 40 days afterward. He remains partially paralyzed and confined to a wheelchair.

In an October 27, 2008, order, the Department rejected Rowley's industrial injury claim and required repayment of time-loss benefits in the amount of

---

[2] A state toxicologist testified at the administrative hearing that this was a "pretty high level" that would likely cause impairment.

$3,542.88. The order cited RCW 51.32.020[3] as the basis for this rejection. Following Rowley's protest, the Department affirmed its order on January 13, 2009. Rowley appealed to the Board.

On July 8, 2011, an industrial appeals judge (IAJ) reversed the Department's order, concluding that Rowley's "injury did not result from the deliberate intention of Mr. Rowley himself while he was engaged in the attempt to commit, or in the commission of, a felony, within the meaning of RCW 51.32.020." The Department appealed the IAJ's order. On January 30, 2012, in a split decision, the Board likewise reversed the Department's January 13, 2009, order, concluding that "Mr. Rowley's industrial injury did not occur while he was engaged in the attempt to commit, or in the commission of, a felony, within the meaning of RCW 51.32.020."

The Department appealed to Pierce County Superior Court, which affirmed the Board's decision on December 7, 2012. The superior court adopted the Board's legal conclusion that "[t]he Department bore the burden of proving, by clear, cogent and convincing evidence that Mr. Rowley's injury occurred when

---

[3] RCW 51.32.020 states,

If injury or death results to a worker from the deliberate intention of the worker himself or herself to produce such injury or death, or while the worker is engaged in the attempt to commit, or the commission of, a felony, neither the worker nor the widow, widower, child, or dependent of the worker shall receive any payment under this title.

he was in the commission of a felony, within the meaning of RCW 51.32.020, which burden the Department did not meet." The court also concluded, "Absent a confirming laboratory test the Department did not prove the white substance in the baggie, found in Mr. Rowley's clothes, was methamphetamine." The Department appeals.

## STANDARD OF REVIEW

In workers' compensation cases, this court reviews a superior court judgment as it does in other civil cases.[4] This means that we examine the record to see if substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from those findings.[5] When the trial court has applied the wrong standard for the sufficiency of the evidence or burden of proof, this court remands to the trial court for the trial court to apply the correct standard.[6]

## ANALYSIS

In this case we address three issues in the order identified: (1) what burden of proof and standard of proof apply when the Department claims the felony payment bar of RCW 51.32.020, (2) can the Department prove the identity

---

[4] RCW 51.52.140.
[5] Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 180, 210 P.3d 355 (2009).
[6] Spring v. Dep't of Labor & Indus., 96 Wn.2d 914, 920-21, 640 P.2d 1 (1982).

of an alleged controlled substance without a laboratory test, and (3) does the felony payment bar authorize the Department to deny a claim or only payments?

Washington's Industrial Insurance Act reflects a legislatively imposed compromise between employers and workers.[7]

> In exchange for limited liability the employer would pay on some claims for which there had been no common law liability. The worker gave up common law remedies and would receive less, in most cases, than he would have received had he won in court in a civil action, and in exchange would be sure of receiving that lesser amount without having to fight for it.[8]

Because the Industrial Insurance Act is remedial in nature, courts liberally construe its provisions "in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker."[9]

A worker who applies for benefits must prove an injury in the course of employment.[10] If the Department denies the claim, the injured worker may appeal to the Board.[11] At this appeal, the worker has the burden of establishing a right to compensation.[12] If a worker's injury occurs while the worker is in the

---

[7] Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 469, 745 P.2d 1295 (1987).

[8] Dennis, 109 Wn.2d at 469.

[9] Dennis, 109 Wn.2d at 470.

[10] RCW 51.52.050(2)(a); WAC 263-12-115(2); Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795-96, 321 P.3d 1275 (2014), petition for review filed, No. 90587-8 (Wash. Aug. 5, 2014).

[11] RCW 51.52.050(2)(a).

[12] RCW 51.52.050(2)(a).

commission of a felony, the act's felony payment bar prevents the worker from receiving benefits.[13]

The parties do not dispute that Rowley's injury occurred in the course of his employment. However, the Department alleged that Rowley possessed methamphetamine when injured and ordered Rowley to repay the time-loss compensation previously paid to him. Possession of methamphetamine is a felony under the Uniform Controlled Substances Act, chapter 69.50 RCW.

In Rowley's appeal, the Board concluded that once a worker has established a prima facie case, the burden shifts to the Department "to prove by at least clear, cogent, and convincing evidence that the worker was injured while engaged in the attempt to commit or the commission of a felony as defined under state or federal criminal law." The superior court affirmed this legal conclusion.

The Department disagrees with this interpretation of RCW 51.32.020. It contends that Rowley must make an initial prima facie showing both that he was injured in the course of employment and that he was not engaged in the commission of a felony when injured. It also asserts that the preponderance of the evidence standard of proof applies rather than the clear, cogent, and convincing standard.

---

[13] RCW 51.32.020.

On cross appeal, Rowley makes three arguments. First, he contends that a worker establishes a prima facie entitlement to benefits by showing that an injury occurred in the course of employment. Next, he claims that when the Department asserts the felony payment bar, it must prove a felony conviction. Alternatively, he claims the Department must prove beyond a reasonable doubt that a worker's injury occurred during the commission of a felony.

We agree with the superior court: the Department must prove facts establishing the felony payment bar by clear, cogent, and convincing evidence.

We first address the burden of proof. As noted by the Board, felony payment bar appeals differ from ordinary industrial insurance appeals. The felony payment bar creates a statutory exception to the general rule that the Industrial Insurance Act provides benefits for a covered worker suffering an industrial injury. Courts treat a statutory exception as an affirmative defense to be proved by the party asserting it "unless the statute reflects legislative intent to treat proof of the absence of the exception as one of the elements of a cause of action, or the exception operates to negate an element of the action."[14]

The legislative history for the felony payment bar in chapter 51.32 RCW provides no indication of any legislative intent to treat the absence of felonious conduct as an element of an industrial insurance claim. Proof that an industrial

---

[14] Asplundh Tree Expert Co. v. Dep't of Labor & Indus., 145 Wn. App. 52, 61, 185 P.3d 646 (2008).

injury occurred during the commission of a felony does not negate any element of an industrial insurance claim. Thus, we conclude that the trial court properly treated the felony payment bar as an affirmative defense to be proved by the Department. We note that this allocation of the burden of proof furthers the general policy of construing the Industrial Insurance Act liberally "in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker."[15]

Citing Stafford v. Department. of Labor & Industries,[16] the Department asks this court to analogize the felony payment bar to the burden of a crimes victim compensation act[17] (CVCA) claimant. Stafford does not support the Department's position. In Stafford, the court decided that a CVCA claimant had the burden of proving the innocence of the crime victim. We find significant the analysis used by the court. It acknowledged the general rule that one asserting the benefits of a general limitation of a statute has the burden of proof.[18] It used the language of the legislature's statutory statement of intent as a lens to inform its construction of the relevant statute and concluded the legislature intended to deviate from the general rule and place on the claimant the burden of proving the

---

[15] Dennis, 109 Wn.2d at 470.
[16] 33 Wn. App. 231, 653 P.2d 1350 (1982).
[17] Ch. 7.68 RCW.
[18] Stafford, 33 Wn. App. at 236.

victim's innocence.[19] The Department has not identified any parallel statement of legislative intent to support its request that we also deviate from the recognized general rule.

We next address the standard of proof. The preponderance of the evidence standard of proof usually applies in industrial insurance appeals.[20] No general principle or fixed rule exists for deciding when to require more than a preponderance of the evidence to prove something. Without any one guiding principle or rule, Washington courts have required proof of facts by clear, cogent, and convincing evidence in over 30 different types of cases.[21] These cases include those involving "involuntary mental illness commitment, fraud, 'some other quasi-criminal wrongdoing by the defendant' as well as the risk of having one's 'reputation tarnished erroneously.'"[22] For the most part, when these cases do not involve the loss of liberty or deprivation of a property interest, they reflect a policy decision.

---

[19] Stafford, 33 Wn. App. at 236.

[20] Olympia Brewing Co. v. Dep't of Labor & Indus., 34 Wn.2d 498, 504, 208 P.2d 1181 (1949).

[21] See 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 301.3, at 200-06 & nn.5-41 (5th ed. 2007).

[22] Bang D. Nguyen v. Dep't of Health Med. Quality Assurance Comm'n, 144 Wn.2d 516, 524-25, 29 P.3d 689 (2001) (quoting Addington v. Texas, 441 U.S. 418, 424, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)).

For example, in <u>American Products Co. v. Villwock</u>,[23] the court held that emancipation of a minor must be proved by clear, cogent, and convincing evidence because the right and duty of a parent "to exercise parental control and to provide parental care and support, is of such paramount importance and necessity, and is so thoroughly recognized in law and by society in general."

Here, the Board made a policy decision about the standard of proof based upon the consequences of a felonious conduct finding,

> [A]n injured worker subjected to the felony provision of RCW 51.32.020 could also be subject to significant reputation damage, a potential for later criminal prosecution, and (as is the case at bar) significant financial consequences, such as an overpayment of benefits received prior to a determination that the worker committed the felony. The felony payment bar in RCW 51.32.020 punishes the worker who committed or attempted to commit a felony when injured inasmuch as it denies the worker and his or her beneficiaries the right to receive payments for time-loss compensation, permanent partial disability, and permanent total disability, under an otherwise allowed claim. The consequences of a finding of felony commission are punitive and sufficiently analogous to cases of willful misrepresentation to require the heightened standard of proof we have long applied in cases where the Department or self-insured employer alleges a worker committed intentional misrepresentation under RCW 51.32.240.[24]

While not controlling, the construction and application of a statute by an administrative agency charged with its enforcement often provides a valuable aid

---

[23] 7 Wn.2d 246, 268, 109 P.2d 570 (1941).
[24] <u>In re Rowley</u>, No. 09 12323, 2012 WL 1374566, at *4 (Wash. Bd. of Indus. Ins. Appeals Jan. 30, 2012).

-11-

to the courts and should be given great weight.[25] This includes consideration of how the agency "'fill[ed] in the gaps'" to effect a general statutory scheme, so long as the "agency does not purport to 'amend' the statute."[26]

Here, the legislature has not provided any standard of proof for the felony payment bar under RCW 51.32.020. Consistent with the purpose of the Industrial Insurance Act, the policy of liberal construction of the act, and other decisions of the Board involving the standard of proof, the Board adopted a clear, cogent, and convincing standard of proof. It provided a sound analysis for its decision that recognizes the significant differences and consequences between a felony payment bar appeal and an ordinary industrial insurance appeal. The trial court appropriately deferred to the expertise of the Board on this issue. Because we find the Board's justification for its decision persuasive, we hold that the State must prove the facts supporting the felony payment bar under RCW 51.32.020 by clear, cogent, and convincing evidence to deny a worker industrial insurance benefits the worker should otherwise receive.

The Department contends that Mercer v. Department of Labor & Industries[27] requires a different result because it involved the same statute. In addition to barring benefits for workers while in commission of a felony, RCW

---

[25] Hama Hama Co. v. Shorelines Hearings Bd., 85 Wn.2d 441, 448, 536 P.2d 157 (1975).
[26] Hama Hama Co., 85 Wn.2d at 448.
[27] 74 Wn.2d 96, 442 P.2d 1000 (1968).

52.32.020 also bars benefits for beneficiaries of workers who commit suicide. In Mercer, the court held the claimant had the burden of establishing by competent medical evidence that the decedent acted under an incontrollable impulse or while in a delirium when he committed suicide. The Department claims that Mercer means all claimants must affirmatively prove that the bars to compensation in RCW 52.32.020 do not apply. However, in Mercer, the parties did not dispute the decedent's suicide.[28] Instead, the claimant asserted that an exception to the suicide bar applied. Consistent with our analysis, the court allocated the burden of proof to the party claiming an exception, the claimant.[29] Thus, Mercer provides no support for the Department's position.

The Department also points to statutory exclusions in RCW 51.12.020 to show that a claimant has the burden to establish that he or she does not fall within these exclusions.[30] However, these exclusions negate employment status

---

[28] Mercer, 74 Wn.2d at 101.
[29] Mercer, 74 Wn.2d at 98.
[30] Bennerstrom v. Dep't of Labor & Indus., 120 Wn. App. 853, 871, 86 P.3d 826 (2004) (summary judgment in favor of Department of Social and Health Services when the claimant did not consent to an employment relationship); Hanquet v. Dep't of Labor & Indus., 75 Wn. App. 657, 662, 879 P.2d 326 (1994) (while the claimant had the burden of proof, he "cannot reasonably be expected to prove the negative of every one of the nine possible exclusions"); Berry v. Dep't of Labor & Indus., 45 Wn. App. 883, 885, 729 P.2d 63 (1986) (trial court upholds Department denial of claim when partner is expressly excluded from coverage in statute); Stelter v. Dep't of Labor & Indus., 147 Wn.2d 702, 711, 57 P.3d 248 (2002) (when claimant's employer was exempt from Industrial Insurance Act, summary judgment was reinstated to affirm denial of claim).

or deal with an employer's exempted status under the Industrial Insurance Act, thus undermining a necessary element of a prima facie case, covered employment status. In contrast, the felony payment bar does not negate proof of a worker's covered employment status.

We next address Rowley's arguments on cross appeal about the standard of proof. Rowley claims that the felony payment bar only applies if the Department proves a felony conviction. Alternatively, he contends that the Department must prove beyond a reasonable doubt the facts supporting the felony payment bar. We disagree with both contentions.

Although this case involves alleged criminal conduct, it is a civil case governed by civil law.[31] Generally, Washington courts do not require proof of a conviction to establish criminal conduct in a civil case.[32] Washington's slayer statute bars those who have willfully and unlawfully participated in killing another person from receiving any benefit as a result.[33] An action under the slayer statute is civil, and the determination of whether a slaying was willful and unlawful must be made in civil court independently of the result of any criminal case. [34] A party can offer a criminal conviction as evidence, but the lack of a criminal conviction does not foreclose the possibility of one acting unlawfully and

---

[31] RCW 51.52.140.
[32] In re Estate of Kissinger, 166 Wn.2d 120, 122-23, 206 P.3d 665 (2009).
[33] Ch. 11.84 RCW.
[34] Kissinger, 166 Wn.2d at 132.

falling under the civil slayer statute.[35] Rowley offers no persuasive reason why the same rule should not apply here.

Alternatively, Rowley argues that due process requires that the Department should have to prove felonious conduct beyond a reasonable doubt. Rowley relies upon Mathews v. Eldridge[36] to support this claim. With the elevated standard of proof applied by the Board and the trial court, an administrative hearing, and a trial de novo in superior court, Rowley received greater procedural protections than most civil litigants. His due process claim borders on frivolous.

Next, we address the Department's challenge to the superior court's conclusion of law that "absent a confirming laboratory test the Department did not prove the white substance in the baggie, found in Mr. Rowley's clothes, was methamphetamine." The Department contends that it can satisfy the clear, cogent, and convincing standard of proof for the identity of the white substance without a laboratory test. We agree.

In a criminal prosecution, without a laboratory test, the State can establish beyond a reasonable doubt the identity of a controlled substance with lay testimony and circumstantial evidence.[37] The same types of evidence can satisfy

---

[35] Kissinger, 166 Wn.2d at 128.
[36] 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).
[37] State v. Hernandez, 85 Wn. App. 672, 675, 935 P.2d 623 (1997).

the lesser standard of clear, cogent, and convincing evidence. The Board and trial court erred by requiring a laboratory test to establish the identity of the substance allegedly possessed by Rowley.

Finally, we address the Department's challenge to the trial court's conclusion of law that the "Department could not reject a claim under the felony provision of RCW 51.32.020," suggesting that the Department may only reject payments. The Department argues that this parsing of claims versus payments contradicts the plain meaning of the statute. Rowley responds that the trial court did not err and that RAP 2.5(a) prevents the Department from raising this issue for the first time on appeal.

The Department argued to the trial court that the plain language of RCW 51.32.020 allowed the Department to properly reject Rowley's claim. The Department properly challenges the trial court's conclusion of law on appeal.[38]

The relevant portion of the statute containing the felony payment bar reads,

> If injury . . . results to a worker . . . while the worker is engaged in the attempt to commit, or the commission of, a felony, neither the worker nor the widow, widower, child, or dependent of the worker shall receive any payment under this title.[39]

---

[38] RAP 2.5(a).
[39] RCW 51.32.020.

The Department must be able to reject claims when payments are prohibited. Under the Industrial Insurance Act, the Department has powers expressly granted as well as implied powers.[40] When the legislature charges an agency with a specific duty but does not specify the means of accomplishing that duty, the agency has implied authority to accomplish that duty.[41] If a claimant is found to be in the commission of a felony during an industrial injury, the claimant may not collect "any payment under this title."[42] The unambiguous language of the statute that empowers the Department to deny all payments under Title 51 RCW implies the Department's power to deny the underlying claim should a statutory bar to payment apply.

The Department cites In re Mathieson,[43] a 1958 Board decision, to show that the term "payment" refers to all benefits and coverage. Mathieson held that a widow was not entitled to any "benefits" because her husband had died while driving under the influence of alcohol, a crime that placed him under the purview of the statutory bar at the time.[44] The Department also notes that the trial court's interpretation would require the Department to pay for medical and vocational

---

[40] Tuerk v. Dep't of Licensing, 123 Wn.2d 120, 124-25, 864 P.2d 1382 (1994).

[41] Tuerk, 123 Wn.2d at 124-25; Ortblad v. State, 85 Wn.2d 109, 117, 530 P.2d 635 (1975).

[42] RCW 51.52.020.

[43] No. 7099, 1958 WL 56109 (Wash. Bd. of Indus. Ins. Appeals Jan. 28, 1958).

[44] Mathieson, 1958 WL 56109, at *7-8.

benefits since these are not direct payments to the worker. We agree with the Department's assertion that the legislature intended the felony payment bar of RCW 51.32.020 to exclude workers engaged in felonious conduct from any industrial insurance "coverage." This means the Department has the implied authority to deny that worker's claim.

When the Department appeals, the worker can recover attorney fees under RCW 51.52.130(1) if the worker's "right to relief is sustained." Because we must remand this matter to the trial court to decide if the Department presented sufficient evidence to prove Rowley possessed methamphetamine, we deny Rowley's fee request.

## CONCLUSION

Because courts liberally construe the Industrial Insurance Act to provide coverage, we adopt the Board's conclusion that the Department has the burden of proving the felony payment bar of RCW 51.32.020 by clear, cogent, and convincing evidence. Because the trial court erroneously required a laboratory test to establish the identity of the substance allegedly possessed by Rowley, we

remand for further proceedings consistent with this opinion.

Leach, J.

WE CONCUR:

Trickey, J

Becker, J.