## HARRIS v. OKLAHOMA NATURAL GAS CO.

No. 11299—Opinion Filed May 29, 1923.

1. **Negligence — Personal Injuries — When Action Lies at Common Law—Demurrer Improperly Sustained.**

Where action is filed for personal injuries sustained in temporary emergency work, authorized and directed by one having apparent authority in the premises, and where the facts do not show a contract, either express or implied, for employment other than in the instant emergency, and no agreement as to wages is either shown or fairly to be inferred, it is error to sustain a demurrer to plaintiff's petition upon the ground that the court is without jurisdiction of the subject-matter of the action.

2. **Master and Servant—Workmen's Compensation Law—Construction—When Applicable.**

Our Workmen's Compensation Law is remedial in its objects and operation, and should receive a liberal construction in favor of those entitled to its benefits, but before one is entitled thereto he should be held to strict proof that he is in a class embraced within the provisions of the law, and nothing can be presumed or inferred in this respect.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Payne County; Arthur R. Swank, Judge.

Action by Charles J. Harris against Oklahoma Natural Gas Company, a corporation, to recover damages for personal injuries sustained by the plaintiff while assisting in some emergency work for the defendant. Demurrer to plaintiff's petition sustained, to reverse which the case is brought here by petition in error and case-made. Reversed, with directions.

On January 8, 1918, Charles J. Harris lived upon a farm near Cushing adjoining a lease on which the defendant was drilling for oil or gas. Plaintiff had frequently been upon the lease of the defendant for the purpose of watching the drilling operations and no objection was ever made to his presence there. On said 8th day of January he visited said lease, and at the time of such visit the servants of the defendant were endeavoring to rig a wire cable in order that drilling could proceed, work at the time being shut down until this cable

could be rigged for use. The cable was wound upon a large spool, which was lying upon its side, and it was necessary to turn this spool so as to insert an axle of some kind through the hole in the spool in order that the cable could be unwound without twisting or kinking it, and in order that it might be rigged up on the derrick for use in said operations. Defendant's servants endeavored to do this work alone, but finding themselves unable to accomplish it, the driller called upon the plaintiff, and several other men who were standing near and watching, to assist in the work. Plaintiff did not at once comply with the request, and was again asked to "give us a lift." Plaintiff was a farmer, had never been engaged in oil well work, and knew nothing of the weight of the cable or of the proper method and appliances to be used in handling it, but upon being requested the second time to assist, stepped forward to do so. A number of persons, including plaintiff, took hold of the spool and succeeded in partially lifting it, when one of the servants of the defendant placed under the spool some kind of a support made of timber to hold the spool until those lifting it could take new positions, and get new holds on the spool before lifting it higher. The support placed under the spool proved inadequate and collapsed under the weight of the cable. This caused the spool to fall upon plaintiff's bended knee and drove the bones of his leg practically through the foot and heel, breaking and dislocating the bones of the heel, leg, and knee, with the result that plaintiff was confined for months and walked thereafter only with the aid of a crutch for months longer, and is not now able to walk upon that leg without pain, and is permanently disabled.

Plaintiff filed his petition, and thereafter amended the same, and such amended petition embraces the facts substantially as above stated. To the amended petition defendant interposed a demurrer upon two grounds:

"First. That the petition does not state facts sufficient to constitute a cause of action in favor of plaintiff and against the defendant, Oklahoma Natural Gas Company.

"Second. That this court has no jurisdiction of this cause."

Upon hearing, the court below sustained the demurrer of the defendant, and the plaintiff has brought the case here by a petition in error and case-made, assigning as error the action of the trial court in sustaining the demurrer to the amended petition.

Burford, Miley, Hoffman & Burford, for plaintiff in error.

Ames, Lowe & Richardson, for defendant in error.

Opinion by LOGSDON, C. Only one question is presented and argued in this case by counsel for the respective parties, and that question is thus stated in the brief of defendant:

"Whether or not the district court of Payne county, Oklahoma, had jurisdiction of the subject-matter of the action.

A determination of this question involves a construction and interpretation of certain provisions of chapter 246, Sess. Laws 1915, known as the Workmen's Compensation Law, which, with the amendments thereto, is embraced in chapter 56, Comp. Stats. 1921.

Both plaintiff and defendant rely upon the case of St. Louis & San Francisco Ry. Co. v. Bagwell, 33 Okla. 189, 124 Pac. 320, and the line of authorities consonant therewith, but for very different reasons. Plaintiff insists that upon the principle there announced the sufficiency of his petition to state a cause of action is established. Defendant insists that by reason of the principle there announced the relation of master and servant in the instant case is established, by reason whereof plaintiff is brought within the operation of the Workmen's Compensation Law as an employe of defendant, and that therefore the district court is without jurisdiction of the subject-matter of this action.

In the Bagwell Case, the question determined was whether such a legal relation existed between plaintiff and defendant as would make the injury received by the plaintiff an actionable wrong. In the case at bar the question to be determined is whether such a legal relation existed between plaintiff and defendant as will make the injury received by the plaintiff a proper subject for compensation under the language of the statute.

"The fundamental difference between the conception of liability and compensation is found in the presence in the one, and the absence from the other, of the element of actionable wrong." Lewis, etc., County v. Ind. Acc. Board (Mont.) 155 Pac. 268.

It must be fully realized that the ideas comprehended in the workmen's compensation legislation are of comparatively recent formulation in this country, and that little uniformity exists. Therefore, their expression in legislation and the construction placed upon such legislation by the courts are

so diverse that little applicable authority is found in other jurisdictions by which to measure our own.

A decision of this court relied upon by plaintiff and sought to be distinguished by defendant, is that of Hogan v. State Industrial Commission, 86 Okla. 161, 207 Pac. 303. The facts in that case were:

"That on December 16, 1919, the respondent, T. R. Hogan, was operating a cotton gin at Wilburton, Okla., under the name of Wilburton Gin Company, and on that day had in his employ a superintendent and a ginner, the latter being named Green. On that day the claimant, James Otto Cherry, hauled a load of cotton to the gin, arriving about 10 o'clock a. m., and, finding a number of wagons to be unloaded ahead of him, he waited there until about 1:30 p. m., and was at that time standing in the doorway at the gin room, which contained four gin stands in a row, running east and west. The west gin stand became clogged, and Green, the ginner went to it, raised the breast, and asked Cherry, who was standing near by to help him hold it. Thereafter the east gin became clogged and Green went to that gin stand. The additional weight of the breast being thrown on Cherry caused his hand and arm to be pulled down into the saws, which so tore his hand and forearm that it was necessary to amputate his arm. Cherry had never worked around a cotton gin, and had never engaged in any other occupation than farming. Green had no authority from the respondent to employ additional help about the gin, and Cherry did not understand that Green, or any one else, intended to pay him for rendering the assistance requested by Green, and Cherry did not expect pay for such assistance."

Upon that state of facts this court held that Cherry was not entitled to compensation under the Workmen's Compensation Law.

Plaintiff relies upon this case as establishing in this state the line of demarcation between the right of action for damages in this class of cases and the right to proceed for compensation under the Workmen's Compensation Law, in so far as the question of employment may determine that right.

Defendant seeks to distinguish this case from the case at bar and says that:

"In doing this, all that it is necessary for us to do is to ask the court to bear in mind that the reason Cherry was not an employe of Hogan was because the party who employed Cherry was without authority to make the employment; that the determining factor in the case was not whether Green had agreed to pay Cherry compensation or wages, but whether Green had authority to employ Cherry. It having been determined by the court that Green had no

authority to employ Cherry, the result necessarily followed that the relation of master and servant did not exist, and the Industrial Commission was without jurisdiction."

It seems apparent that counsel has overlooked, or has failed to be impressed by, the significance of the language used by Justice Johnson in announcing the conclusion of the court:

"It seems to us that it obviously follows from the above provisions of the Workmen's Compensation Law that compensation is payable only where claimant is an employe **under the quoted provisions.**"

The quoted provisions are section 2, art. 1, ch. 246, Sess. Laws 1915, which declares that "compensation provided for in this act shall be payable for injuries sustained by employes," etc.; and subdivisions 3, 4, and 8 of section 2, ch. 14, Sess. Laws 1919. These are now subdivisions 3, 4, and 8 of section 7284, Comp. Stats. 1921, which section contains the definitions of the terms used in the Workmen's Compensation Law. Subdivision 4 reads:

" 'Employe', means any person engaged in manual or mechanical work, in the employment of any person, firm or corporation carrying on a business covered by the terms of this act."

Subdivision 8 reads:

" 'Wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident," etc.

The words "employe" and "wages," as used in these definitions, are correlative terms, and their definitions should be considered together in determining who are embraced in section 2 of the act. Thus considered, it is readily seen that compensation shall be payable for injuries sustained (sec. 2) by "any person engaged in manual or mechanical work" (subd. 4, sec. 7284), "under contract of hiring in force at the time of the accident" (subd. 8, sec. 7284). This is not militated against by the fact that "wages" is also made the basis for computing compensation.

Under the facts in the Hogan Case the contention of counsel for defendant "that the determining factor in the case was not whether Green had agreed to pay Cherry compensation or wages, but whether Green had authority to employ Cherry", is plausible and might be held to correctly state the limits of this court's holding were it not for the fact that Justice Johnson expressly rested the decision upon "the quoted provisions" of the statute. The fact that Green was without authority to employ Cherry was

not the ultimate fact in the case, but was merely evidence going to establish the ultimate fact—a circumstance to show that he was not an "employe" within the language of the statute. Other circumstances in evidence aiding to establish this ultimate fact were that Cherry came to the gin that morning to have a load of cotton ginned; that he had never worked at a gin and knew nothing of gin machinery; that he did not understand that Green or any one else intended to pay him, and that he expected no pay.

Workmen's Compensation Acts are remedial in character, and should receive a liberal construction in order to effectuate their purposes and objects, but they should not be amended by judicial construction upon an attenuated theory of inclusion. Persons entitled to the benefits of the act should be favored by a liberal interpretation of its provisions, but for this very reason they should be held to strict proof of their title as beneficiaries.

Numerous authorities from other jurisdictions have been cited and quoted from by both plaintiff and defendant, and, while they have been read carefully, it is not deemed necessary to review them here. Very pertinent is the language of Lord Dunedin in Plumb v. Cobden, Ann. Cas. 1914 B, 495:

"It is well, I think, in considering the cases which are numerous, to keep steadily in mind that the question to be answered is always the question arising upon the **very words of the statute.**"

It is concluded, upon the authority of Hogan v. State Industrial Commission, and the language of our statute, that plaintiff is not within the terms of the Workmen's Compensation Law of this state.

The order and judgment of the district court of Payne county should be reversed, with directions to overrule the demurrer of defendant to the petition of plaintiff, and to proceed with the trial of said cause.

By the Court: It is so ordered.