**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAR 1 7 2016
Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Mar 17, 2016

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES, | NO. 91357-9 |
| Petitioner, | |
| v. | EN BANC |
| BART ROWLEY, SR., | |
| Respondent. | Filed MAR 1 7 2016 |

GORDON McCLOUD, J.—Bart Rowley Sr. was injured while driving a truck for his employer, and he subsequently filed a claim for workers' compensation benefits. The Department of Labor and Industries (Department) denied Rowley's claim because it determined that Rowley was injured while committing a felony: possession of a controlled substance. The Industrial Insurance Act (IIA), Title 51 RCW, bars payment of workers' compensation under that circumstance. RCW 51.32.020. Rowley filed a notice of appeal to the Board of Industrial Insurance Appeals (Board). After considering testimony from several witnesses, an industrial

appeals judge (IAJ) found that there was insufficient evidence to sustain the Department's decision and ordered the Department to approve Rowley's claim.

The Department has challenged that order four times: in an appeal before a three-member board panel, at the superior court, at the Court of Appeals, and finally in this court. Every lower court affirmed the IAJ's decision that Rowley was entitled to benefits. Although we reverse the Court of Appeals' holding on the applicable evidentiary standard, we too agree that Rowley is entitled to benefits.

## FACTS

Bart Rowley worked as a truck driver for 33 years. Rowley was severely injured[1] when his truck-trailer veered off a highway overpass and landed on the roadway below. The accident occurred midday on a clear and dry day. Suspecting that drug use might have been a contributing factor, law enforcement sent Officer Donevan Dexheimer, a trained drug recognition officer, to Harborview hospital, where Rowley was treated after the accident. At Harborview, an emergency room (ER) nurse provided Officer Dexheimer with a "baggie" that she said had come from Rowley's pocket. The baggie contained residue that Officer Dexheimer believed to

---

[1] Rowley's spinal cord was severed in the accident, causing paraplegia, among other conditions.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

be methamphetamine. Officer Dexheimer also had Rowley's blood drawn and submitted to the Washington State Toxicology Laboratory (Lab) for testing.

Rowley filed a claim for workers' compensation benefits. The Department rejected Rowley's claim, finding that it was barred by RCW 51.32.020. The relevant part of that statute provides:

> If injury or death results to a worker from the deliberate intention of the worker himself or herself to produce such injury or death, *or while the worker is engaged in the attempt to commit, or the commission of, a felony,* neither the worker nor the widow, widower, child, or dependent of the worker shall receive any payment under this title.

(Emphasis added.)

As will be discussed in more detail below, this statute contains two bars to payment of a workers' compensation claim: the deliberate self-injury bar (not at issue in this case) and the felony payment bar (at issue in this case). In its order denying benefits, the Department appeared to conflate the two payment bars and thus paraphrased the statute inaccurately:

> CLAIM IS REJECTED BASED [ON] RCW 51.32.020 WHICH STATES IF INJURY OR DEATH RESULTS TO A WORKER FROM THE DELIBERATE INTENTION OF THE WORKER HIMSELF . . . WHILE THE WORKER IS ENGAGED IN THE ATTEMPT TO COMMIT, OR THE COMMISSION OF, A FELONY . . . . SHALL NOT RECEIVE ANY PAYMENT UNDER THIS TITLE.

Clerk's Papers (CP) at 275 (alterations in original).

3

Rowley filed a request for reconsideration, which the Department denied. He then filed a notice of appeal with the Board. The Board granted Rowley a hearing before IAJ Kathleen Stockman.

Consistent with Washington Administrative Code (WAC) 263-12-115(2)(a), which provides that "[i]n any appeal under . . . the [IIA] . . . , the appealing party shall initially introduce all evidence in his or her case in-chief,"[2] Rowley presented his evidence first. He called only two witnesses: himself and the office manager for his employer. Consistent with WAC 263-12-115(2)(c), the Department then presented its case in chief. It called six witnesses: Officer Dexheimer; Brian Capron, a forensic specialist from the Lab; Washington State Trooper David Roberts, the first responder to Rowley's accident; Washington State Trooper Nicholas King; Mary Comstock, a nurse who treated Rowley in the ER; and Jennifer Compton, another ER nurse who treated Rowley.

The office manager for Rowley's employer testified that Rowley was working when the accident occurred. She thus provided evidence of injury during the course of employment. Rowley testified that he was in a coma for 40 days after the accident and could not remember anything about the events leading up to it. But he also

---

[2] The only exception to this rule applies to cases in which the Department alleges that a worker has received benefits through "fraud or willful misrepresentation." WAC 263-12-115(2)(a).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

testified that he had taken random drug tests many times over the course of his employment and was not aware of ever testing positive. He thus presented some evidence from which an inference could be drawn that he did not possess drugs at the time of his accident.

The Department then called Officer Dexheimer; he testified that he was trained to identify both signs of impairment and types of drugs. He also testified about his interactions with nurses treating Rowley. He stated that a nurse (either Nurse Comstock or Nurse Compton) told him that Rowley "had a quote/unquote 'surprise' in his pocket when he arrived." CP at 737. Officer Dexheimer explained that he could not perform a field sobriety test on Rowley because Rowley was unconscious, but that he measured Rowley's pulse, listened to the conversations occurring between the treating nurses, and got Nurse Comstock to help him find Rowley's clothes and a baggie with some suspected methamphetamine residue in it. Rowley's pulse was normal, but Officer Dexheimer testified that he believed this was unusual because hospital staff had given Rowley morphine and Valium. Under those circumstances, Officer Dexheimer considered Rowley's pulse high, possibly indicating use of a central nervous system stimulant prior to the accident. On one hand, Officer Dexheimer testified that he could not form an opinion about whether Rowley was impaired by drug use because he could not perform a proper field

sobriety test. On the other hand, he testified that "coming down" from stimulants could cause a person to fall asleep at the wheel and that this might explain Rowley's accident. CP at 751. He also stated that he arrested Rowley for driving under the influence of an intoxicant (DUI) (while Rowley was unconscious in the hospital) and he opined that the accident "more likely than not" occurred because Rowley was affected by methamphetamine. CP at 754.

Officer Dexheimer also testified that he asked Nurse Comstock where the baggie was and that she told him Rowley's clothes and the baggie were both in the trash. He related the following exchange with Nurse Comstock:

> So she pointed out -- We looked through the garbage bag that was actually still in the room, and it was nearly empty. She says, "No, this isn't the right bag." We went outside, we opened up the garbage bag, and she started opening the bags that were inside, and she says, "oh, here it is," hands it to me, or points it out to me. I can't remember whether she actually physically handed it to me or just said, "That's the one. That's it." . . . .

CP at 746. When Officer Dexheimer saw the baggie, he determined that the residue in it looked like methamphetamine. He explained that this was because of its color, texture, and packaging.

Finally, Officer Dexheimer testified that he provided Nurse Comstock with two vials so she could draw Rowley's blood. Officer Dexheimer labeled these vials with Rowley's name, but could not remember whether he also labeled them with the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

date or the case number. After Nurse Comstock took Rowley's blood, Officer Dexheimer gave the vials to Trooper King.

On cross-examination, Officer Dexheimer explained that, according to his police report, hospital staff had washed the contents of the baggie down the sink before he arrived at Harborview. He stated that although Nurse Comstock found the baggie in the trash for him, he believed that a different staff member originally discovered the baggie. He also testified that he might have written the wrong date in his accident report and the wrong name on the blood vials ("Rawley" instead of Rowley), CP at 765, that he did not test the baggie or take a sample from the hospital sink, and that coffee can raise a person's heart rate. CP at 766-67.

Capron, the forensic specialist from the Lab, testified that the Lab received two vials of blood marked "R-a-w-l-e-y," along with a "request for analysis" marked "R-o-w-l-e-y." CP at 784. He explained that the Lab's analysts noted that discrepancy and then tested the blood. Capron testified that the blood tested positive for high levels of methamphetamine. He also testified that he believed it was more probable than not that Rowley was impaired by methamphetamine when his truck went off the road.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Compton, one of the ER nurses, testified that she did not specifically remember Rowley but that her records showed that Officer Dexheimer gave her vials so she could draw Rowley's blood.

Comstock, the other ER nurse, testified that she remembered Rowley, but not well. She explained that when a trauma patient like Rowley comes into the ER, his or her clothing is cut off either before or upon arrival. She also stated that when ER staff cut clothing from a patient, they search it for valuables, lock up any valuables that are found, and dispose of any other items. Comstock said she was sure that Rowley's clothes were disposed of.

Comstock also testified that Officer Dexheimer had disrupted protocol in the ER and that she had provided him with a baggie that she was certain, on that day, came from Rowley's clothes. She recounted the events as follows:

> I remember there being [a] disruptive scenario in that room, not because the patient was sick but because now we had the officer in-house. It was a . . . significant delay.
>
> . . . [W]e had done a lot of care and quantified the patient was very sick, but then this officer shows up and wants all of these things that we've already disposed of and wants to be engaged in the care immediately []regardless of the acuity. I do remember that part.
>
> . . . .
>
> So I remember him wanting the clothes, being very frustrated about them not being readily available and being frustrated that we had found something that we suspected to be an illicit drug and that we

didn't have to produce to him, and his expectation was that they would have saved all of this stuff, anticipating somebody to be there, but that's not our general practice.

So I do remember him and I -- he and I dialoguing, and I told him I could find the clothes if they -- I knew where they would go, because they had already been removed from the room, because the housekeepers are very diligent about cleaning those spaces.

So we went down the hall to where they would be and I do remember -- I don't remember what trash they were in. I don't remember what the color of the bags were. I don't remember what the clothes looked like. I just remember us pulling the clothes out, me finding the ones that were his and the Baggie that he was in question about, because it was distinctive. . . .

. . . .

. . . I know that that day I was certain that they were [Rowley's clothes]. I couldn't recall to you at this point what they looked like or who they were [from], but they came from that room that was the only room that had just -- they had just cleaned that day because I remember the housekeepers coming down to be helpful to, you know, help me go through the trash. That's not something they like for us to do at all, so it took significant negotiating to be able to get into the trash to be able to pull it out, because it's just not safe.

CP at 905-07. Comstock also testified that she could not remember whether she or someone else originally discovered the baggie with the smiley faces on it. She explained that she had to go "down to the hallway . . . to negotiate with the staff of the housekeepers to get into the room to be able to go through the trash, something they're instructed to not allow us to do." CP at 925-26.

Trooper King testified that he came to Harborview shortly after Rowley's accident and that Officer Dexheimer provided him with two pieces of evidence there: the blood vials taken from Rowley and "a small baggie of crystal substance." CP at 948. He stated that he labeled the blood vials with the name "'Rowley Bart A.,'" Rowley's date of birth, and "item numbers." CP at 948-49. He later clarified that he had marked the vials with the name "R-A-W-L-E-Y," per Officer Dexheimer's original spelling, and testified that he used an incorrect "[p]roperty number" on the "transfer-disposition report" associated with the vials and put the wrong time "time obtained" in his evidence report—2:30 a.m. instead of 2:30 p.m. CP at 953-56, 965. Trooper King also testified that he tested the residue in the baggie using a "field test kit" or "NIK [(narcotics identification kit)] test[]" kit and determined it to be "ecstasy, methamphetamine." CP at 972-75, 948.

Finally, Trooper Roberts testified that he was the first responder to the scene of Rowley's accident. He explained that the accident occurred in daylight, in dry weather, and on a portion of road with no signs or lights. Trooper Roberts stated that after his investigation, he recommended that the State charge Rowley with possessing methamphetamine in violation of the Controlled Substances Act, chapter 69.50 RCW. But Trooper Roberts also testified that (1) he charged Rowley with DUI, and (2) he referred the case to the prosecutor's office as a felony "Violation of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the Controlled Substance Act," and (3) he was not sure whether any criminal charges were ever filed against Rowley. CP at 1005-07. It is undisputed that the State never charged Rowley with a felony.

On the basis of that testimony, Judge Stockman reversed the Department's order. In a "Proposed Decision and Order," she concluded that the Department had not met its burden—which she determined to be a preponderance of the evidence standard—to show that RCW 51.32.020—as inaccurately paraphrased in the Department's original order—barred compensation: "[i]nnuendos and boot strapping are not sufficient to establish even by a preponderance of the evidence that the claimant's injury resulted from the deliberate intention of Mr. Rowley himself while he was engaged in the attempt to commit, or in the commission of, a felony." CP at 69. Judge Stockman therefore found that "[o]n or about August 14, 2008, the injuries sustained by Bart A. Rowley, Sr., did not result from the deliberate intention of Mr. Rowley himself while he was engaged in the attempt to commit, or in the commission of, a felony." CP at 70.

*Procedural History*

A three-member Board panel granted the Department's petition for review. The Department argued that the IAJ erred by requiring it to prove that Rowley intended to commit a felony and by concluding that the preponderance of the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

evidence did not establish that Rowley possessed methamphetamine. The Board panel affirmed in a split vote, with three separate opinions applying three different evidentiary burdens. CP at 11-19.

The controlling opinion (signed by two judges) reached four conclusions relevant to our analysis. CP at 11-17.

First, the opinion addressed the confusion in the original and proposed orders regarding the legal standard at issue. It explained that compensation will be barred simply because a worker was injured while committing or attempting a felony, and that the Department does not need to prove any separate "'deliberate intention'" in order to deny benefits. CP at 15 (emphasis omitted).

Second, the opinion held that the Department must prove the commission or attempt of a felony by clear, cogent, and convincing evidence. It acknowledged that the normal standard in IIA appeals is the preponderance of the evidence standard but it concluded that felony payment bar appeals were different for two reasons: (1) the felony payment bar "deprive[s] the worker of benefits to which he or she would otherwise be entitled but for the allegation of wicked conduct" and (2) an adverse determination exposes the worker to significant financial and reputational consequences and possibly even criminal prosecution. CP at 14. In reaching this conclusion, the controlling opinion also relied on a prior board decision interpreting

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

another statute, RCW 51.32.240, which governs cases in which the Department alleges that a claimant obtained benefits through "willful misrepresentation." *Id.* at 14-15.

Third, the Board's controlling opinion concluded that the Department had not met its evidentiary burden. It explained that while the evidence showed that Rowley likely used methamphetamine, this was not dispositive because driving under the influence is only a gross misdemeanor. It further explained that while possession is a felony, the evidence that Rowley actually possessed methamphetamine in the truck was not clear, cogent, and convincing. It cited Officer Dexheimer's failure to explain why he believed the residue in the baggie was methamphetamine, the chain of custody problems involving the baggie, and Officer King's failure to explain why his field test was reliable or how that test could reveal both ecstasy and methamphetamine.

Finally, the controlling opinion held that "the Department cannot reject a claim under the felony provision of RCW 51.32.020 [because] . . . [t]he proper inquiry [under that statute] is whether Rowley is barred from receiving industrial insurance payments." CP at 13. In other words, the panel issued a procedural holding: whenever the Department concludes that a claimant was injured in the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

course of employment while committing or attempting a felony, it must grant the claim and then deny payment.

One member of the panel concurred in the decision, stating that he would have required the Department to prove the attempt or commission of a felony by proof beyond a reasonable doubt. CP at 17-18. The third member dissented, concluding that the preponderance of the evidence standard governs in all workers' compensation claims and that the Department's evidence met that standard. CP at 18-19.

The Department appealed to the superior court. CP at 2-4. The superior court affirmed the Board's decision in all respects. CP at 1182-85. The Department again appealed. CP at 1186-87.

Division One of the Court of Appeals affirmed two of the lower court's holdings: (1) the holding that the Department bears the burden to prove that the felony payment bar applies and (2) the holding that this proof must be by "clear, cogent, and convincing" evidence. *Dep't of Labor & Indus. v. Rowley*, 185 Wn. App. 154, 157, 340 P.3d 929 (2014), *review granted*, 183 Wn.2d 1007, 352 P.3d 187 (2015). But it reversed the holding that the Department cannot reject claims under the felony payment bar. *Id.* at 168-70.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

With respect to the burden of proof, the Court of Appeals reasoned that the felony payment bar is an affirmative defense: a statutory exception that the Department asserts to escape the general rule that a covered worker is entitled to benefits whenever he or she is injured on the job. *Id.* at 162.

With respect to the standard of proof, the Court of Appeals acknowledged that the preponderance standard usually applies in industrial insurance appeals. *Id.* at 163 (citing *Olympia Brewing Co. v. Dep't of Labor & Indus.*, 34 Wn.2d 498, 504, 208 P.2d 1181 (1949), *overruled in part on other grounds by Windust v. Dep't of Labor & Indus.*, 52 Wn.2d 33, 40, 323 P.2d 241 (1958)). But it concluded that the Board panel had made a sound "policy decision" to apply the clear, cogent, and convincing evidentiary standard in felony payment bar cases. *Id.* at 164-65. It decided that the superior court "appropriately deferred to the expertise of the Board on this issue," in light of the purposes underlying the IIA. *Id.* at 165.

STANDARD OF REVIEW

Generally, when we review an agency's decision we sit in the same position as the superior court and apply the Administrative Procedure Act directly to the record before the agency. *Brown v. Dep't of Commerce*, 184 Wn.2d 509, 359 P.3d 771 (2015); ch. 34.05 RCW. But a modified standard applies to workers' compensation appeals. *Gorre v. City of Tacoma*, 184 Wn.2d 30, 33, 357 P.3d 625

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(2015). Under that standard, which is discussed in detail in the analysis below, the superior court presumes the correctness of the Board's decision and can reverse it only upon finding, by a preponderance of the evidence, that the Board's "findings and decision are erroneous." *Id.* at 36 (citing *Ravsten v. Dep't of Labor & Indus.*, 108 Wn.2d 143, 146, 736 P.2d 265 (1987)).

In an IIA appeal from the superior court, the court reviews the record "'to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.'" *Id.* (quoting *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999)). As always, we review questions of statutory interpretation de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001).

## ANALYSIS

Three questions of law are presented in this case.

The first is which party bears the burden of proof on the felony payment bar, RCW 51.32.020. On this question of first impression, the IIA is silent. For the reasons given in the analysis below, we hold that the Department bears this burden.

The second question presented implicates the burden of production under RCW 51.52.050(2)(a), which provides:

> Whenever the department has taken any action or made any decision relating to any phase of the administration of this title the

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

worker, beneficiary, employer, or other person aggrieved thereby may request reconsideration of the department, or may appeal to the board. In an appeal before the board, the appellant shall have the burden of proceeding with the evidence to establish a prima facie case for the relief sought in such appeal.

The Department interprets this statute to mean that an aggrieved party must make some affirmative showing that an initial department order is *incorrect*. It contends this is a prerequisite to "establish[ing] a prima facie case for the relief sought in such appeal." *Id.*

Rowley and Amicus Washington State Association for Justice Foundation (WSAJF) disagree. They counter that a claimant establishes a "prima facie case" for relief on appeal just by presenting evidence that he or she was injured in the course of employment. Br. of Amicus WSAJF at 13; Suppl. Br. of Resp't at 8.

For the reasons given in the analysis below, we conclude that in order to establish a "prima facie case" under RCW 51.52.050(2)(a), a party must make a viable case that a department decision is incorrect. However, we also conclude that a party can satisfy this requirement by showing (1) injury in the course of employment and (2) that the Department's order is unsupported by sufficient evidence.

The third question presented is what evidentiary standard applies to the felony payment bar determination. The Court of Appeals upheld the Board's application

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of the "clear, cogent, and convincing" standard as a valid exercise of agency authority to "'fill[ ] in the gaps' to effect a general statutory scheme." *Rowley*, 185 Wn. App. at 164-65 (alteration in original) (internal quotations marks omitted) (quoting *Hama Hama Co. v. Shoreline Hr'gs Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975)). Because we conclude that there is no statutory "gap" to be filled in this case, we reverse the Court of Appeals on this issue and hold that the Department must prove commission or attempt of a felony only by a preponderance of the evidence.

I.   When the Department Denies Benefits under the Felony Payment Bar, It Bears the Burden of Proving the Commission or Attempt of a Felony

No IIA provision expressly allocates the burden of proof on the felony payment bar, and no case law controls this issue. Thus, this case presents us with a question of first impression.

As noted above, the Court of Appeals concluded that the Department bears the burden of proof on the felony payment bar because it characterized that bar as an affirmative defense to an otherwise meritorious benefits claim. *Rowley*, 185 Wn. App. at 162. That court reasoned that "[p]roof that an industrial injury occurred during the commission of a felony does not negate any element of an industrial insurance claim." *Id.*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Rowley argues that this analysis was correct. He contends that there are three "element[s]" of a prima facie benefits claim—(1) injury (2) in the course of (3) employment—and that commission of a felony does not negate any of these elements. Suppl. Br. of Resp't at 3-4 (emphasis omitted). The Department disagrees. It contends that the Court of Appeals created an arbitrary and confusing distinction between necessary and unnecessary "elements" of a worker's compensation claim. Suppl. Br. of Pet'r at 14.[3]

We agree with the Department that the affirmative defense analogy is inapt. As Rowley acknowledges, an affirmative defense generally excuses a violation without negating an element of the plaintiff's claim. *Kastanis v. Educ. Emps. Credit Union*, 122 Wn.2d 483, 493, 859 P.2d 26, 865 P.2d 507 (1993). But Rowley argues that the "elements" of a claim under RCW 51.52.050(2)(a) are (1) injury (2) in the course of (3) employment. Suppl. Br. of Resp't at 1. The felony payment bar

---

[3] The Department also cites RCW 51.52.050(2)(c), which provides that "[i]n an appeal from an order of the department that alleges willful misrepresentation, the department or self-insured employer shall initially introduce all evidence in its case in chief." It argues that this statute proves, by logical extension, that "the Legislature intended to hold an appealing worker to the burden of proof in all cases *except* when the Department alleges benefits were received through willful misrepresentation." Suppl. Br. of Pet'r at 8. We reject this argument. RCW 51.52.050(2)(c) addresses only the order of proof, as opposed to the burden of proof. Accordingly, the rule that implements that provision is titled "Order of presentation of evidence." WAC 263-12-115(2) (boldface omitted).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

arguably negates the second element: injury while committing a felony is not injury in the *course* of employment.

Indeed, in order to show that he or she is entitled to benefits, a worker must sometimes negate the deliberate self-injury bar codified at RCW 51.32.020. *Mercer v. Dep't of Labor & Indus.*, 74 Wn.2d 96, 101, 442 P.2d 1000 (1968). In *Mercer*, the widow of a logger filed a claim for benefits, arguing that a hand injury her husband sustained in the course of his employment caused him to commit suicide six months later. *Id.* at 97-98. The Department denied the claim under the deliberate self-injury bar, and this court affirmed, reasoning that the plaintiff had not "ma[de] out a prima facie case" (for entitlement to benefits/relief on appeal). *Id.* at 101. Specifically, it held that "[i]n cases such as this, in view of the statutory language precluding recovery if the workman's death results from his own deliberate intention to take his life, we have allowed recovery only where [the claimant presents] competent medical evidence establish[ing] that the decedent acted under an incontrollable impulse or while in a delirium." *Id.* (emphasis added) (citation omitted) (citing *Karlen v. Dep't of Labor & Indus.*, 41 Wn.3d 301, 249 P.2d 364 (1952)).

The Department contends that we apply this rule because the deliberate self-injury bar breaks the chain "'between cause and a proximately related result'" and

thus "negates an element of the cause of action" (injury *in the course of employment*). Suppl. Br. of Pet'r at 14 (quoting *Schwab v. Dep't of Labor & Indus.*, 76 Wn.2d 784, 791-92, 653 P.2d 1350 (1969)). Our older cases appear to support this argument. *See Arsnow v. Red Top Cab Co.*, 159 Wash. 137, 159, 292 P. 436 (1930) (in both common law tort and industrial insurance claims, claimant must prove that a suicide was "moved by an uncontrollable impulse" in order to show that it did not break the chain of causation between employment and death). We decline to overrule *Mercer* and must therefore reject the Court of Appeals' "affirmative defense" analysis.[4]

Although we reject the Court of Appeals' affirmative defense analysis, we affirm its holding that the Department bears the burden to prove that the felony payment bar applies. Common sense and policy concerns may dictate the allocation of the burden of persuasion in a civil case. 5 KARL B. TEGLAND, WASHINGTON

---

[4] The Court of Appeals concluded that because the parties in *Mercer*, 74 Wn.2d at 101, did not dispute the decedent's suicide, the *Mercer* court properly allocated the burden of proof to the claimant—the party who "asserted . . . an exception to the suicide bar." *Rowley*, 185 Wn. App. at 166. The Court of Appeals explained that this was "[c]onsistent with our analysis," *id.*, according to which "one asserting the benefits of a general limitation of a statute has the burden of proof," *id.* at 163 (citing *Stafford v. Dep't of Labor & Indus.*, 33 Wn. App. 231, 236, 653 P.2d 1350 (1982)). This reasoning ignores the plain language of the RCW 51.32.020, which does not bar payments in the event of a *suicide*, but in the event of *"deliberate"* self-injury. (Emphasis added.) Thus, by invoking the self-injury bar, the Department alleges deliberate self-injury (not suicide).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

PRACTICE: EVIDENCE LAW AND PRACTICE § 301.2, at 193 (5th ed. 2007) (where preponderance standard applies, "[t]rial convenience, access to facts, and substantive policy are all factors for consideration, but for the most part the burden of persuasion must be determined on a case-by-case basis"). Common sense dictates that a worker should not be required to prove a negative—noncommission of a felony—in order to obtain benefits under the IIA. Indeed, in this case the Department's order denying benefits did not even mention what the alleged felony was. A worker should not be required to rebut, with positive evidence and before any hearing occurs, the Department's bare assertion that he or she has committed a felony. We do not interpret the IIA to impose such a burden.

A contrary conclusion would require courts to *presume* the commission or attempt of a felony, a presumption that would offend basic principles of judicial fairness.[5] Consistent with these principles of fairness, and absent any clear statutory

---

[5] *See City of Boston v. Lecraw*, 58 (17 How.) U.S. 426, 435, 15 L. Ed. 2d 118 (1854) (because "'the law will not presume any man's acts to be illegal,'" courts "will ascribe long possession which cannot otherwise be accounted for, to a legal title" (quoting 3 THOMAS STARKIE, A PRACTICAL TREATISE ON THE LAW OF EVIDENCE 1203 (3d ed. 1830))); *Ricard v. Williams*, 20 U.S. (7 Wheat) 59, 106, 5 L. Ed. 398 (1822) ("the law will not presume a wrong"); *Hall v. Anderson*, 18 Wn.2d 625, 636, 140 P.2d 266 (1943) ("'[t]he law will not presume, unless forced to do so, that a person intends to do an illegal act [and] [i]t will not, therefore, presume that the parties intended to make an illegal contract'" (quoting *Richards v. Ernst Wiener Co.*, 207 N.Y. 59, 65, 100 N.E. 592 (1912))); *Stevenson v. Woodhull Bros.*, 19 F. 575, 576 (W.D. Texas 1884) ("[t]he law will not presume that an act that may lawfully be done was unlawful in the absence of proof").

directive, we hold that the legislature intended to burden the Department with proving that a felony bars payment under RCW 51.32.020.

II.      To Establish a "Prima Facie Case for the Relief Sought" in an Appeal under RCW 51.52.050(2)(a), a Worker Must Show That the Department's Order Was Incorrect, but a Worker Can Meet This Requirement by Showing (1) Injury in the Course of Employment and (2) That the Department's Order Is Not Supported by Sufficient Evidence

The second question presented in this case is also one of first impression for this court. It requires us to interpret RCW 51.52.050(2)(a), the statute requiring the appellant in "an appeal before the [B]oard . . . [to] proceed[] with the evidence to establish a prima facie case for the relief sought in such appeal." As noted above, the Department interprets this statute to mean that an aggrieved party must make some affirmative showing that an initial Department order is *incorrect*.

We agree that in order to establish a "prima facie case" under RCW 51.52.050(2)(a), a party must show that a department decision is incorrect. However, we also conclude that a party can satisfy this requirement by showing (1) injury in the course of employment and (2) that the Department's order is unsupported by sufficient evidence.

This is the only viable interpretation of RCW 51.52.050(2)(a) for two reasons.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

First, a contrary holding would shift the burden of proof on the felony payment bar, requiring an aggrieved worker to provide evidence of *noncommission* of a felony, even before any formal hearing occurred. (Although RCW 51.52.050(2)(a) permits an "appeal to the board," an "appeal" from a department order is in fact the first proceeding at which any evidence is taken.) As explained above, this result would be inconsistent with basic principles of fairness.

Second, the Department's interpretation of RCW 51.52.050(2)(a) does not comport with cases interpreting RCW 51.52.115, the statute that governs IIA appeals from the Board to the superior court. RCW 51.52.115 provides that "[i]n all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same." The plain terms of this statute place a greater burden on the appellant than does RCW 51.52.050(2)(a), the statute at issue in this case. RCW 51.52.115 provides that the Board's decision is presumed correct on appeal; RCW 51.52.050(2)(a) contains no such provision. And while RCW 51.52.050(2)(a) provides that the appellant bears only the burden to come forward with a "prima facie case for the relief sought" on appeal, RCW 51.52.115 places the "burden of proof" squarely on the appellant. Nevertheless, this court has held that an appellant can meet the burden imposed under RCW 51.52.115 just by showing that the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Department's order is not supported by sufficient evidence—that is, without necessarily presenting any new *affirmative* evidence that the Department's order is incorrect. *Olympia Brewing*, 34 Wn.2d at 506.[6] Given the difference in language summarized above, RCW 51.52.050(2)(a) cannot possibly impose a greater evidentiary burden on an aggrieved party.

For all of these reasons, we hold that a worker challenging a Department order that denies benefits under the felony payment bar establishes a "prima facie case for

---

[6] In *Olympia Brewing*, the Department approved a widow-claimant's application for benefits solely on the ground that her husband was found unconscious at work and died shortly thereafter. 34 Wn.2d at 499-500. The employer appealed, and a board hearing occurred at which only the employer presented any evidence. *Id.* at 500. This evidence established that the worker had a heart condition, but did not establish any causal connection between his work and his death. *Id.* at 502. Nevertheless, the Board affirmed the grant of benefits. *Id.* at 500. The employer appealed, and the superior court affirmed. *Id.*

On appeal to this court, the *Olympia Brewing* claimant made an argument very similar to the Department's argument in this case, i.e., that her failure of evidence was "immaterial" in light of the Board's final decision:

> The respondents make another contention. *i.e.*, that the fact that no causal relationship has been established between the death and the employment is immaterial, because the joint board determined that Mrs. Smith was entitled to a widow's pension . . . and that determination is *prima facie* correct and must prevail unless and until the employer sustains the burden of proving that she is <u>not</u> so entitled.

*Id.* at 504 (underline added). This court rejected that argument and reversed the grant of benefits, holding that "one sustains the burden of proving that a decision of the joint board is erroneous when one demonstrates that there is not sufficient evidence to support it." *Id.* (citing *St. Paul & Tacoma Lumber Co. v. Dep't of Labor & Indus.*, 19 Wn.2d 639, 144 P.2d 250 (1943)).

25

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the relief sought on appeal" under RCW 51.52.050(2)(a) by showing (1) injury in the course of employment and (2) that there is insufficient evidence that the felony payment bar applies.

III.    The Court of Appeals Erred by Requiring the Department To Prove the Commission or Attempt of a Felony by Clear, Cogent, and Convincing Evidence; the Correct Standard Is a Preponderance

With respect to the evidentiary standard, Rowley repeats the analysis in the Court of Appeals' opinion. He contends that the Board's "policy decision" is owed "'great weight'" because it filled a "gap" in the statute the Board is charged with implementing. Suppl. Br. of Resp't at 9 (internal quotation marks omitted) (quoting *Rowley*, 185 Wn. App. at 165 & n.25 (citing *Hama Hama*, 85 Wn.2d at 448)). While we recognize that an agency is entitled to some deference when it interprets an *ambiguous* statute it is charged with implementing (when it "'fill[s] in the gaps' via statutory construction"), *Hama Hama*, 85 Wn.2d at 448, we find no gaps or ambiguity justifying the Board's interpretation in this case.

Indeed, the Court of Appeals did not identify a *statutory* gap in this case, it identified what it perceived as a gap in civil case law. The IIA provision governing rules on appeal provides that "[e]xcept as otherwise provided in this chapter, the practice in civil cases shall apply to appeals prescribed in this chapter." RCW 51.52.140. And as the Department points out, the preponderance of the evidence

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

standard generally applies in civil cases. Suppl. Br. of Pet'r at 15. Instead of acknowledging that general rule of civil case law, the Court of Appeals determined that "[n]o general principle or fixed rule exists [in civil case law] for determining when to require more than a preponderance of the evidence to prove something." *Rowley*, 185 Wn. App. at 163-64. Then, citing one treatise, one case addressing procedural due process claims, and one case addressing parental rights, the Court of Appeals concluded that "Washington courts have required proof of facts by clear, cogent, and convincing evidence in over 30 different types of cases," and that "when these cases do not involve the loss of liberty or deprivation of a property interest, they reflect a policy decision." *Id.* at 164 (citing *Bang D. Nguyen v. Dep't of Health, Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 524-25, 29 P.3d 689 (2001) (quoting *Addington v. Texas*, 441 U.S. 418, 424, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979))); *Am. Prods Co. v. Villwock*, 7 Wn.2d 246, 268, 109 P.2d 570 (1941); 5 TEGLAND, *supra*, § 301.3, at 200-06 & nn.5-41.

We disagree. No case cited by the Court of Appeals, or collected in the treatise it cited, applies the "clear, cogent and convincing" standard to proof of a felony in a civil case. *Rowley*, 185 Wn. App. at 164. Most of them apply the long-standing common law rule that clear and convincing evidence is required to alter or invalidate

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

a written contract.[7] Several more apply a heightened evidentiary standard as a matter

of statutory law.[8] And the rest apply it because it is constitutionally required (an

argument that Rowley did not raise in this court).[9]

---

[7] *E.g., Pickle v. Lincoln County State Bank*, 61 Wash. 545, 547, 112 P. 654 (1911) (to rescind a contract, common law elements of fraud must be proved by clear and convincing evidence); *Zucker v. Mitchell*, 62 Wn.2d 819, 384 P.2d 815 (1963) (oral trust must be established by clear and convincing evidence); *In re Estate of Malloy*, 57 Wn.2d 565, 358 P.2d 801 (1961) (clear and convincing evidence required to prove undue influence in the making of a will; note that this rule derives from *In re Estate of Geissler*, 104 Wash. 452, 456, 177 P. 330 (1918), which states that "[w]ills are favored in the law, and it is a cardinal principle of construction that the testimony to overcome them must be cogent and convincing"); *Golden v. Mount*, 32 Wn.2d 653, 670, 203 P.2d 667 (1949) ("[i]t is a well-settled rule that a court of equity will not specifically enforce a parol contract concerning real estate, void because of nonconformance with the statute of frauds, unless the existence of the contract be established by clear and satisfactory proof"); *Cummings v. Sherman*, 16 Wn.2d 88, 93, 132 P.2d 998 (1943) ("'[b]ecause . . . of the great opportunity for fraud, and because of reluctance on the part of courts to render ineffective a subsequent will of a testator, the contract to make mutual wills must be established by clear and convincing evidence'" (quoting *Allen v. Dillard*, 15 Wn.2d 35, 45, 129 P.2d 813 (1942))).

[8] *In re Disciplinary Proceeding Against Allotta*, 109 Wn.2d 787, 792, 748 P.2d 628 (1988) ("[i]n attorney discipline proceedings, state bar counsel has the burden of establishing an act of misconduct by a *clear preponderance* of the evidence" (citing RLD 4.11(b))); *In re Disciplinary Proceeding Against Deming*, 108 Wn.2d 82, 109, 763 P.2d 639 (1987) ("[i]n a judicial disciplinary proceeding, the applicable standard of proof is 'clear, cogent and convincing evidence'" (quoting JQCR 14(d))); *In re Estate of Peters*, 43 Wn.2d 846, 858, 264 P.2d 1109 (1953) ("[t]he language of RCW 11.20.070, requiring that the provisions of a lost or destroyed will be clearly and distinctly proved by at least two witnesses, is mandatory and cannot be disregarded by the courts"); *Premium Distrib. Co. v. Int'l Bhd. of Teamsters Union Local 174*, 35 Wn. App. 36, 39-40, 664 P.2d 1306 (1983) (RCW 49.32.070 "requires clear proof of union participation in, authorization of, or ratification of, contemptuous acts . . . in order to impose liability on a union"); RCW 7.48A.030 (a "moral nuisance" action is subject to the burden of proof generally applicable in civil cases, except that "the standard of proof on the issue of obscenity shall be clear, cogent, and convincing evidence").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Even if these cases could be said to derive from varying "policy" concerns, *Rowley*, 185 Wn. App. at 164,[10] these are policy concerns that the courts—not the Board—are empowered to address. The Board is required to apply a particular statute, and that statute says that "the practice in civil cases" shall apply to IIA appeals, RCW 51.52.140. Civil practice in our state has required proof of a felony by a preponderance—not by clear, cogent, and convincing evidence. *See, e.g., In re Estate of Kissinger*, 166 Wn.2d 120, 128, 206 P.3d 665 (2009).

As noted above and in the Court of Appeals' decision, the Board panel applied the clear, cogent, and convincing evidentiary standard in part because that standard applies to the Department's allegations of "'willful misrepresentation'" in benefit-recoupment cases. *Rowley*, 185 Wn. App. at 164-65 (quoting *In re Rowley*, No. 09

---

[9] *In re Det. of McLaughlin*, 100 Wn.2d 832, 834, 676 P.2d 444 (1984) (procedural due process requires clear, cogent, and convincing evidentiary standard in involuntary commitment proceedings); *Taskett v. KING Broad. Co.*, 86 Wn.2d 439, 447, 546 P.2d 81 (1976) (in defamation suit against press, requirement that private citizen plaintiff show clear and convincing evidence of common law defamation elements, but not "'actual malice,'" strikes proper balance between protections under the First Amendment to the federal constitution and state policy favoring victim compensation).

[10] The treatise on which the Court of Appeals relied does not actually say that "[n]o general principle or fixed rule exists for deciding when to require more than a preponderance of the evidence to prove something." *Rowley*, 185 Wn. App. at 163-64. In this part of its opinion, the Court of Appeals appears to have confused the *standard* of proof in all civil cases with the *burden* of persuasion in a case where the preponderance standard governs. *See* 5 TEGLAND, *supra*, § 301.2, at 193 ("[t]here are no general, fixed tests for allocating the burden of persuasion among the parties").

29

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

12323, 2012 WL 1374566, at *4 (Wash. Bd. Indus. Ins. Appeals Jan. 30, 2012)). In this case, the panel decided that the same standard should apply when the Department seeks to prove commission of a felony, in light of the severe consequences that could follow. CP at 4.

But the Board's application of the heightened standard in willful misrepresentation cases does not reflect a policy decision to depart from general civil practice. Instead, it reflects a decision to *adhere to* long-standing rules of civil practice, despite recent amendments to the IIA. When the legislature enacted the "willful misrepresentation" statute, RCW 51.32.240(5), in 2004, it replaced an older statute that required the Department to prove that benefits were "fraudulently obtained." *In re Frank L. Hejna*, No. 04 24184, 2006 WL 3520132, at *7 (Wash. Bd. Indus. Ins. Appeals Aug. 28, 2006); LAWS OF 2004, ch. 243, § 7. Consistent with the rule that civil practice governs in IIA appeals, the Board interpreted the old statute to incorporate the *common law* rule that "fraud required proof by clear, cogent, and convincing evidence." *Id.* at *8. When the Board first interpreted the amended (willful misrepresentation) statute, it concluded that the legislature did not intend to alter that long-standing (common-law-derived) burden. *Id.* Thus, applying

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the common law preponderance standard in felony payment bar cases is actually *consistent* with the Board's decisions in willful misrepresentation cases.[11]

> IV.   The Evidence in This Case Is Insufficient To Sustain a Finding That Rowley Committed a Felony

For the reasons given above, the Department bears the burden of proving the applicability of the felony payment bar by a preponderance of the evidence. The next question is whether it has satisfied that burden.

The answer is no. As the Department acknowledges, DUI is not a felony.[12] The only felonious conduct alleged in this case is *possession* of a controlled substance. In the criminal context, evidence of intoxication may support a finding of *prior* possession, but only when it is combined with other corroborating evidence of sufficient probative value. *See State v. Dalton*, 72 Wn. App. 674, 677, 865 P.2d 575 (1994) (evidence of intoxication was sufficient, in combination with defendant's

---

[11] The Board's original decision on the willful misrepresentation statute also cites to *Bang D. Nguyen*, 144 Wn.2d at 527-28, a procedural due process case, for the principle that a higher standard is appropriate to "civil cases 'involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant.'" *Hejna*, 2006 WL 3520132, at *9 (emphasis omitted) (quoting *Nguyen*, 144 Wn.2d at 527-28). This is certainly a case of an individual against a government agency. But Rowley raised no procedural due process claim before this court.

[12] The exceptions for felony DUI were not charged or alleged in this case.

"close proximity to a beer keg and plastic cups of beer," to sustain conviction for minor in possession of liquor).

But that is all we have here. As Judge Stockman recognized at the initial hearing, the nurses who treated Rowley in the ER testified that they could not remember if he had clothes on when he arrived; that they could not remember what his clothes looked like; and that ER staff make no effort to keep track of nonvaluable items removed from a patient. Further, a baggie from which alleged methamphetamine had been dumped in the sink was arguably recovered from a trash bag in a room down the hall from where Rowley was being treated, by someone other than whoever supposedly found it in Rowley's pocket, and it was field tested and determined to contain residue of "ecstasy *or* methamphetamine." CP at 974 (emphasis added). We agree that this evidence does not establish, even by a preponderance, that Rowley possessed methamphetamine when his truck left the highway.

Because we hold that the evidence of possession was insufficient as a matter of law, we do not remand to the trial court to reweigh the evidence. *See Olympia Brewing*, 34 Wn.2d at 507 (when appellate court is faced with "failure of proof" in workers' compensation claim, the appropriate disposition is "reversal, with a direction to deny the claim").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

CONCLUSION

We affirm the Court of Appeals' holding that the Department bears the burden of proving that the felony payment bar applies. Because the Department bears this burden, an aggrieved worker establishes a "prima facie case for the relief sought" in an appeal under RCW 51.52.050(2)(a) if he or she can show that the preponderance of the evidence does not establish the commission or attempt of a felony.

We reverse the Court of Appeals' holding that the Department must prove the applicability of the felony payment bar by clear, cogent, and convincing evidence and hold that the correct evidentiary standard is a preponderance. But we also hold that the evidence in this case was insufficient to establish commission of a felony under that standard. Accordingly, we hold that Rowley is entitled to benefits.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____

WE CONCUR:

_____

_____

_____

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Dept't of Labor & Indus. v. Rowley (Bart)*

No. 91357-9

MADSEN, C.J. (concurring)—I agree with much of what the majority holds. I agree that in an appeal of a Department of Labor and Industries (Department) decision denying benefits, the party appealing has the burden of production to establish a prima facie case for the relief sought, and that in the present case, this requires the claimant to make a viable case that the Department's decision is incorrect. I agree that the appropriate standard of proof in the present case is a preponderance of the evidence. I also agree that the evidence here is insufficient to show that Bart Rowley Sr. committed a felony for purposes of applying the felony payment bar contained in RCW 51.32.020 (discussed *infra*). Accordingly, I agree that Rowley is entitled to benefits. In my view, however, the claimant seeking benefit payments, not the Department, bears the burden of proof to show the absence of a felony that would bar benefit payments under RCW 51.32.020.

Discussion

RCW 51.32.020 provides in part,

If injury or death results to a worker from the deliberate intention of the worker himself or herself to produce such injury or death, or *while the worker is engaged in the attempt to commit, or the commission of, a felony,*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> neither the worker nor the widow, widower, child, or dependent of the
> worker shall receive any payment under this title.

(Emphasis added.) Noting the "absen[ce of] any clear statutory directive" and instead relying on "principles of fairness," the majority holds that "the legislature intended to burden the Department with proving that a felony bars payment under RCW 51.32.020." Majority at 22. In my view, that approach is at odds with the general scheme of the Industrial Insurance Act (IIA or act), Title 51 RCW, as explained in our case law interpreting the IIA. We long ago held that "while the act should be liberally construed in favor of those who come within its terms, persons who claim rights thereunder should be held to strict proof of their right to receive the benefits provided by the act." *Olympia Brewing Co. v. Dep't of Labor & Indus.*, 34 Wn.2d 498, 505, 208 P.2d 1181 (1949), *overruled on other grounds by Windust v. Dep't of Labor & Indus.*, 52 Wn.2d 33, 323 P.2d 241 (1958).

The majority reasons that "a worker should not be required to prove a negative—noncommission of a felony—in order to obtain benefits under the IIA." Majority at 21. But we have previously interpreted the intentional injury portion of RCW 51.32.020 to place just such a burden on the claimant. In *Mercer v. Department of Labor & Industries*, we explained:

> in view of the statutory language [in RCW 51.32.020] precluding recovery
> if the workman's death results from his own deliberate intention to take his
> life, . . . we have allowed recovery *only* where [the claimant presents]
> competent medical evidence establish[ing] that the decedent acted under an
> incontrollable impulse or while in a delirium.

2

No. 91357-9
(Madsen, C.J., concurring)

74 Wn.2d 96, 101, 442 P.2d 1000 (1968) (emphasis added). In other words, in *Mercer*, applying RCW 51.32.020, we imposed the requirement that the claimant must prove a negative—that the deceased's taking his own life was *not* the result of his deliberate intentional act. I see no reason why we should retreat from imposing the same requirement when applying another portion of the same statute in the present case. While the majority maintains that requiring the claimant here to "prove a negative" is unfair, majority at 21, we have already imposed that burden in the even more difficult context of a person who is deceased. *See Mercer*, 74 Wn.2d at 101.[1] Indeed, placing the burden on the claimant here would promote uniformity and predictability in application of the IIA.

The majority contends that "[c]ommon sense dictates" that the burden be placed on the Department here. Majority at 21. But again, the approach that comports with our case law "dictates" that the burden here, which concerns the claimant's establishing his right to benefits, should be borne by the claimant. *See, e.g., Knight v. Dep't of Labor & Indus.*, 181 Wn. App. 788, 795-96, 321 P.3d 1275 (in a claim for workers' compensation benefits, the injured worker bears the burden of proving that he is entitled to benefits), *review denied*, 181 Wn.2d 1023 (2014); *Robinson v. Dep't of Labor & Indus.*, 181 Wn. App. 415, 426, 326 P.3d 744 (workers' compensation claimant bears the burden of establishing eligibility for benefits), *review denied*, 337 P.3d 325 (2014). Again, the

---

[1] *See also Gatterdam v. Dep't of Labor & Indus.*, 185 Wash. 628, 635, 56 P.2d 693 (1936) (approving jury instructions (1) that placed burden on claimant to prove that deceased worker's death by suicide was the result of insanity, which was caused by industrial injury, and (2) that directed that "unless the death of [worker] was the result of an uncontrollable impulse, in no way directed by the mind, then the plaintiff [claimant] cannot recover").

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

general scheme of the IIA argues in favor of placing the burden here on the claimant

rather than the department. For instance, RCW 51.52.050(2)(a) provides:

> Whenever the department has taken any action or made any decision relating to any phase of the administration of this title the worker, beneficiary, employer, or other person aggrieved thereby may request reconsideration of the department, or may appeal to the board. *In an appeal before the board, the appellant shall have the burden of proceeding with the evidence to establish a prima facie case for the relief sought in such appeal.*

(Emphasis added); *see also Zoff v. Dep't of Labor & Indus.*, 174 Wash. 585, 586, 25 P.2d

972 (1933) ("The decision of the department was *prima facie* correct, and the burden was

upon the one attacking that decision to overcome the same by evidence."); *Hastings v.*

*Dep't of Labor & Indus.*, 24 Wn.2d 1, 5, 163 P.2d 142 (1945) ("The first rule is that the

decision of the department is *prima facie* correct and the burden of proof is upon the

party attacking the decision.").

As noted, we have long held that the burden of establishing eligibility for workers'

compensation benefits lies with the claimant. *See Kirk v. Dep't of Labor & Indus.*, 192

Wash. 671, 674, 74 P.2d 227 (1937) ("'Persons entitled to the benefits of the act should

be favored by a liberal interpretation of its provisions, but for this very reason they should

be held to strict proof of their title as beneficiaries.'" (quoting *Okla. Nat. Gas Co.*, 1923

OK 311, 91 Okla. 39, 42, 216 P. 116)); *Guiles* v. *Dep't of Labor & Indus.*, 13 Wn.2d 605,

610, 126 P.2d 195 (1942) ("We are mindful of the rule that the burden rests on claimant

to prove every element of his claim by a preponderance of the evidence."); *Cyr v. Dep't*

*of Labor & Indus.*, 47 Wn.2d 92, 97, 286 P.2d 1038 (1955) ("'persons who claim rights

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

[under the IIA] should be held to strict proof of their right to receive the benefits provided by the act'" (quoting *Olympia Brewing*, 34 Wn.2d at 505)); *Lightle v. Dep't of Labor & Indus.*, 68 Wn.2d 507, 510, 413 P.2d 814 (1966) ("We have held that a liberal construction of the act does not dispose of the requirement that a claimant must prove his claim by competent evidence."). As can be seen, in matters concerning eligibility for workers' compensation benefits, absent a specific exception,[2] the burden of proof has consistently been placed on the claimant asserting the right to such benefits. I would not alter application of that burden in the present case.

---

[2] See RCW 51.52.050(2)(c), which provides:
> In an appeal from an order of the department that alleges *willful misrepresentation*, the *department* or self-insured employer *shall initially introduce all evidence in its case in chief.* Any such person aggrieved by the decision and order of the board may thereafter appeal to the superior court, as prescribed in this chapter.

(Emphasis added.)

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 91357-9
(Madsen, C.J., concurring)

Madsen, C.J.

Fairhurst, J.

6