FILED
COURT OF APPEALS
DIVISION II

2015 JUN 23 AM 8: 31

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

BRUCE BUTSON,

Appellant,

v.

DEPARTMENT OF LABOR AND
INDUSTRIES OF THE STATE OF
WASHINGTON,

Respondent.

No. 45928-1-II

UNPUBLISHED OPINION

LEE, J. — Bruce Butson appeals the trial court's order granting the Department of Labor

and Industries' (Department) CR 50 motion for judgment as a matter of law. Butson argues that

(1) the trial court erred in granting the Department's CR 50 motion at the conclusion of his case

before hearing the Department's evidence, and (2) substantial evidence exists to survive the CR

50 motion showing he had a temporary total disability, was undergoing rehabilitative treatment,

and had not reached maximum medical improvement.[1] Because the trial court is not required to

---

[1] At oral argument, Butson conceded that (1) his paraffin treatment was palliative and not curative, and (2) his condition was medically fixed and stable as of January 25, 2011. We accept Butson's concessions, and we do not address Butson's challenge that there remained an issue of fact as to whether he was undergoing rehabilitative treatment from June 4, 2010 through January 25, 2011, and that he had not yet reached maximum medical improvement when the Department closed his claim on January 25, 2011. *See* WAC 296-20-01002 (definition of "Proper and necessary," subsection (2)(b): "Curative treatment produces permanent changes, which eliminate or lessen the clinical effects of an accepted condition. Rehabilitative treatment allows an injured or ill worker to regain functional activity in the presence of an interfering accepted condition. Curative and rehabilitative care produce long-term changes;" subsection (3): maximum medical improvement obtained when injured worker is "fixed and stable"); *Shafer v. Dep't of Labor & Indus.*, 166 Wn.2d 710, 716-17, 213 P.3d 591 (2009) (claim closure appropriate when claimant's condition has become fixed and stable).

hear the Department's evidence and substantial evidence does not exist supporting Butson's claims, we affirm.

## FACTS

### A. BACKGROUND

Bruce Butson appeals the trial court's entry of a judgment as a matter of law against him at the conclusion of his case in chief, on issues relating to a workplace injury he sustained on January 15, 2004.[2] Butson was injured working as a plumber's helper for Blue Herron Plumbing. Butson's prior work history included operating and acting as superintendent of the lumber dry kiln family business; starting, operating, and a truck leasing business; and working for a metal fabrication company. He completed three years of undergraduate studies, two at Oregon State University and one at Washington State University, before leaving school to take over the family business. Butson's elderly mother and disabled sister live with him, and he provides for their care. Between June 4, 2010 and January 25, 2011, Butson was able to attend to their care and conduct his daily routine.

While at work on January 15, 2004, Butson fell from a ladder onto a concrete floor, fracturing his left wrist, and hyperextending his left thumb. Butson's injuries required surgery on his wrist and thumb.

Butson began a vocational plan and was assigned a vocational counselor. To participate in the plan, Butson signed an accountability agreement requiring him to "initiate contact with [his

---

[2] Presumably, Butson filed his claim for this injury shortly after this date; however, no record of this filing is in the record.

2

counselor] at least twice monthly and inform them of [his] progress and barriers." Certified Appeal Board Record (CABR) Ex. 2. The agreement also required Butson to "provide a written doctor's assessment of illness or physical disability if [he] . . . missed more than two consecutive days or a total of 10 days during" the plan. CABR Ex. 2. The vocational plan involved Butson enrolling in Clark College to complete a degree in accounting and business. The vocational plan began in June 2008, and was to be completed by June 2010.

Butson complied with his vocational plan at Clark College until the fall quarter of 2009, when he took time off for reasons unrelated to his condition. Butson returned to Clark College and completed the 2010 winter quarter. Two weeks into the 2010 spring quarter, Butson withdrew, claiming the repetitive use of his thumb in typing caused extreme pain in his thumb and wrist.

On April 30, 2010, Butson received a letter stating he was not complying with the vocational plan's accountability agreement and that he would lose his benefits if he did not cooperate. The letter stated that another letter warning him of the consequences of his noncooperation had been sent on December 22, 2009. The letter also detailed what Butson needed to do to keep his benefits from being suspended, including calling his vocational counselor by May 15, 2010.

Butson sought medical treatment for the pain he was experiencing in his thumb and wrist from Dr. Ezra Rabie on May 27, 2010. Dr. Rabie ordered an x-ray and a bone scan, and recommended that Butson not use a computer for more than two hours per day.

On June 4, the Department sent an order and letter to Butson notifying him of his suspension from vocational benefits for noncooperation with the vocational plan. The order

informed Butson that he had 60 days to appeal the order or it would become final. Butson did not appeal.

Dr. Fleiss was Butson's original doctor, and Butson first met with him on January 21, 2004. Between June 4, 2010 and January 25, 2011, Butson met with three different doctors: Dr. Won, Dr. Weirich, and Dr. Karges. Dr. Won had become Butson's attending physician because Dr. Fleiss had passed away. Dr. Won met with Butson on June 17, 2010, and recorded Butson's pain as being "four to eight out of ten." CABR Won at 13. Butson requested surgery, so Dr. Won referred Butson to Dr. Weirich for a surgical evaluation.

Dr. Weirich did not recommend surgery. Instead, he recommended Butson use a paraffin bath. A paraffin bath is "like a wax bath. . . . the wax melts and you put your wrist in there and it feels good because it's nice and warm." CABR (Dr. Won) at 16. Butson continues to use a paraffin bath every day because it affords his wrist "[s]ome temporary relief . . . and makes it feel at ease for a short period of time." CABR (Butson) at 20. Dr. Won testified that the paraffin baths "would have helped decrease the pain." CABR (Dr. Won) at 24. Butson testified his condition stayed "the same pretty much" between June 4, 2010 and January 25, 2011. CABR (Butson) at 21.

On October 30, 2010, Dr. Karges conducted an independent medical examination. Dr. Karges reviewed Butson's medical records as part of the examination. At that time, Dr. Karges apparently thought Butson might need treatment at some unknown time in the future, but that his condition was currently stable.

On December 2, Dr. Won saw Butson again. At that time, Dr. Won recorded that the pain was still "four to eight out of ten," but closer to four, because Butson was generally feeling better. CABR (Dr. Won) at 18. Dr. Won recommended that if Butson returned to school, he should be

limited to 12 credits. Otherwise, the same restrictions put in place by Dr. Fleiss should be followed. Dr. Fleiss's restrictions were: "Avoid tight gripping and grasping with the left hand, avoid forceful and prolonged bending of [the] left wrist, avoid exposure, direct impact to the left hand and wrist, and limit left-hand lifting to 15 pounds." CABR (Dr. Won) at 15.

Dr. Won last saw Butson on January 7, 2011. Dr. Won recorded Butson's pain level as being "five out of ten," and "[t]hat the flare up had pretty much resolved." CABR (Dr. Won) at 21-22. When asked about the Department's decision to close Butson's claim, Dr. Won testified that Butson's claim was "reasonable to close" on January 25, 2011. CABR (Dr. Won) at 23. Dr. Won also agreed with Dr. Karges' assessment that Butson was in stable condition, adding that Butson might need further surgery "[s]ometime in the future, we're not sure when." CABR (Dr. Won) at 30. Dr. Won believed Butson was going to continue to experience the pain in his hand for the rest of his life. Dr. Won concluded there was "plenty of work . . . such as answering phones" or another "observatory job" that Butson could do as of January 25, 2011, but that Butson could not return to the same work he had been injured doing. CABR (Dr. Won) at 25-26.

B.    PROCEDURE

On December 23, 2010, the Department issued an order closing Butson's claim. The Department affirmed the order on January 25, 2011. Butson appealed, and the order was affirmed by an industrial appeals judge on October 5, 2012.

Butson appealed, and the Board of Industrial Insurance Appeals ("Board") affirmed on December 11, 2012. Butson appealed the Board's order to the Clark County Superior Court. After presenting his case in chief, the trial court granted the Department's CR 50 motion for judgment as a matter of law and dismissed Butson's appeal of the Board's decision. Butson appeals.

ANALYSIS

Butson argues that the trial court erred in granting the Department's CR 50 motion for a judgment as a matter of law. Specifically, Butson argues the trial court erred in granting the CR 50 motion at the conclusion of his case in chief because (1) the trial court should have heard the Department's evidence and (2) substantial evidence exists to survive a CR 50 motion on whether he was totally temporarily disabled. We disagree because the trial court is not procedurally required to hear the moving party's witnesses before ruling on a CR 50 motion and because substantial evidence does not support Butson's argument that he was temporarily totally disabled.

A.    STANDARD OF REVIEW

Under the Industrial Insurance Act (IIA), the trial court's review of a Board order is de novo and is based solely on the evidence and testimony presented to the Board. *Stelter v. Dep't of Labor & Indus.*, 147 Wn.2d 702, 707, 57 P.3d 248 (2002); *Malang v. Dep't of Labor & Indus.*, 139 Wn. App. 677, 683, 162 P.3d 450 (2007); RCW 51.52.115. We review the trial court's decision, not the Board's order. RCW 51.52.140; *Malang*, 139 Wn. App. at 683. And, this court reviews the decision of the trial court in the same way as it does other civil cases. RCW 51.52.140; *Mason v. Georgia–Pac. Corp.*, 166 Wn. App. 859, 863, 271 P.3d 381, *review denied*, 174 Wn.2d 1015, 281 P.3d 687 (2012). On appeal to the superior court, the Board's decision is prima facie correct, and a party challenging the decision must support its challenge by a preponderance of the evidence. RCW 51.52.115; *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

This court reviews a trial court's CR 50 decision de novo. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 530-31, 70 P.3d 126 (2003). A CR 50 motion is properly granted when, "'viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.'" *Davis*, 149 Wn.2d at 531 (quoting *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997)). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the premise is true." *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 254, 177 P.3d 180, *review denied*, 165 Wn.2d 1004 (2008); *Davis*, 149 Wn.2d at 531.

B.     JUDGMENT AS A MATTER OF LAW: HEARING THE DEPARTMENT'S EVIDENCE

Butson argues that the trial court erred in granting the Department's CR 50 motion at the conclusion of his case in chief because it should have considered the Department's evidence before ruling. Butson acknowledged that the trial court had authority to issue a judgment as a matter of law, but argued the trial court needed to hear all of the testimony that was heard in front of the Board before the trial court was allowed to make a ruling on the CR 50 motion. We hold that Butson's argument that the trial court was required to hear the Department's evidence before ruling in the CR 50 motion is contrary to the language of CR 50.

RCW 51.52.140 provides that civil rules of procedure apply to the IIA appeals. CR 50 states:

(1) *Nature and Effect of Motion.* If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient [3] evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(2) *When Made.* A motion for judgment as a matter of law may be made at any time before submission of the case to the jury.

A CR 50 motion is properly granted after the nonmoving party presents its case and before the moving party presents its case. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 628, 285 P.3d 187 (2012) (affirming the dismissal of the worker's claims on a CR 50 motion made after the presentation of her case), *review denied*, 176 Wn.2d 1021 (2013). Here, Butson had concluded his presentation of the case. The Department moved before the presentation of its own case. The timing of the Department's motion was appropriate, and accordingly, the trial court's decision thereon was not improper. Therefore, we hold that the trial court did not err by granting the Department's CR 50 motion before the Department presented its case.

Butson cites RCW 51.52.115 and *Fay v. Northwest Airlines*, 115 Wn.2d 194, 796 P.2d 412 (1990), in support of his argument. However, neither supports his argument.

---

[3] There is apparent confusion as to whether there needs to be "substantial" evidence presented, *see Davis*, 149 Wn.2d at 531, or whether there needs to be "sufficient" evidence presented, *see* CR 50(1). The Washington Supreme Court has attempted to reconcile the distinction between the "sufficient" and "substantial" standards: "'Substantial evidence' has likewise been described as evidence 'sufficient . . . to persuade a fair-minded, rational person of the truth of a declared premise.'" *Davis*, 149 Wn.2d at 531 (quoting *Helman v. Sacred Heart Hosp.*, 62 Wn.2d 136, 147 381 P.2d 605 (1963)).

RCW 51.52.115 states, in relevant part, "The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court." We review the meaning of a statute de novo, giving effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "[I]f a statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10.

RCW 51.52.115 is not ambiguous. The plain language of the statute does not require the superior court to *review all* of the "evidence or testimony" that was "offered before the board or included in the record." RCW 51.52.115. The statute prohibits the superior court from *receiving* "evidence or testimony" that was not "offered before the board or included in the record filed by the board." RCW 51.52.115. It does not require the superior court to ignore the civil rules of procedure, or otherwise contradict RCW 51.52.140. Butson's argument asks this court to read language into RCW 51.52.115 that is neither present nor implied.

With regard to Butson's reliance on *Fay v. Northwest Airlines*, that reliance is misplaced. 115 Wn.2d 194. *Fay* addressed jurisdictional requirements for appealing a Board decision to the superior court under RCW 51.52.110. *Fay*, 115 Wn.2d at 201. *Fay* does not address whether a trial court must review evidence in the context of a CR 50 motion. *Fay*, 115 Wn.2d at 201. Thus, Butson's reliance on *Fay* to support his argument that the trial court erred by failing to hear the Department's evidence before making its CR 50 ruling is misplaced.

C.     TEMPORARY TOTAL DISABILITY

Butson also argues that the trial court erred in finding no substantial evidence supported his claim that he was not temporarily totally disabled from June 4, 2010 through January 25, 2011. Butson contends that whether he was entitled to time loss benefits should have been a jury question.

Temporary total disability ends when the claimant's condition becomes fixed and stable *or* he is capable of reasonably continuous employment at any kind of generally available work. *Hunter v. Bethel Sch. Dist.*, 71 Wn. App. 501, 507, 859 P.2d 652 (1993), *review denied*, 123 Wn.2d 1031 (1994). "General work means even light or sedentary work, if it is reasonably continuous, within the range of the claimant's capabilities, training, and experience, and generally available on the competitive labor market." *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 131, 913 P.2d 402, *review denied*, 130 Wn.2d 1009 (1996). A worker is not totally disabled solely because he is unable to return to his former occupation. *Hunter*, 71 Wn. App. at 507.

Butson claims the trial court erred in equating an "observatory job" with "sedentary and light" work. Br. Appellant at 1. In support, Butson quoted the following exchange during Dr. Won's deposition:

> [Claimant's Attorney]: So, in your opinion based upon reasonable medical probability, was he temporarily totally disabled during the period of time June 4, 2010, through January 25, 2011?
>
> [Dr. Won]: Like I said, if he had an observatory job, then he probably could have done it. But he wasn't able to continue what he was doing.
>
> [Claimant's Attorney]: Was that inability approximately caused by the industrial injury on June [sic] 15, 2004?
>
> [Dr. Won]: Yes.

Br. of Appellant at 15 (quoting CABR (Dr. Won) at 25-26.

Butson claims that Dr. Won's specific use of the term "observatory" cannot mean "work." Br. of Appellant at 16. However, Butson ignores Dr. Won's testimony that immediately preceded the portion quoted in Butson's brief. The immediately preceding testimony is as follows:

> [Claimant's attorney]: Well, as far as any work that you knew that he could perform during that period of time.
>
> [Dr. Won]: There's plenty of work that, you know, if there's modified work such as answering phones or observatory, those kind of work [sic].

CABR (Dr. Won) at 24-25.

One way an employee can be temporarily totally disabled is if he or she is not capable of reasonably continuous employment at any kind of generally available work. *Hunter*, 71 Wn. App. at 507. No evidence exists in the record to support Butson's argument that he is not capable of reasonably continuous employment at any kind of generally available work.

Dr. Won testified that Butson could not return to the job that Butson was hurt doing, but that Butson could perform "plenty of work," doing what Dr. Won termed an "observatory job." CABR (Dr. Won) at 25, 26. Dr. Won noted the observatory jobs Butson could perform included "answering phones," and similar "kind[s] of work." CABR (Dr. Won) at 25. Butson testified that he could not do physically demanding work, such as "lifting 100, 150 pounds of concrete," but could conduct his daily routine and care for himself and the two other adults who were dependent on him. CABR (Butson) at 38. Butson did not present any evidence to support an argument that work such as answering phones was not "generally available" work that he could perform. *Young*, 81 Wn. App. at 131; *see also Leeper v. Dep't of Labor & Indus.* 123 Wn.2d 803, 815, 872 P.2d

11

507 (1994) (requiring the claimant "prove he or she is incapable of performing light or sedentary work of a *general* nature") (emphasis in original). Rather, substantial evidence, in fact all of the evidence, Butson presented shows that Butson was physically able to perform jobs that required him to answer phones and other similar tasks.

Because Butson did not to show he was "physically unable to perform or obtain work of a general nature," *Herr v. Dep't of Labor & Indus.*, 74 Wn. App. 632, 636, 875 P.2d 11 (1994), the issue turns to whether substantial evidence shows Butson was temporarily totally disabled because he did not have the skills to perform any kind of generally available work, such as answering phones. *Young*, 81 Wn. App. at 131. We hold that the evidence does not support Butson's contention that did not have the skills to perform or obtain work of a general nature.

Butson was previously employed as the head of his family's lumber dry kiln business for approximately twelve years; he started, managed, leased, and operated a trucking business; and he worked in the shipping and receiving department of a metal fabrication company off and on for approximately fifteen years. Butson completed three years of undergraduate studies, two at Oregon State University and one at Washington State University, before he was called to run the family business. Butson also completed approximately six quarters of business and accounting classes at Clark College as part of his vocational rehabilitation program after his injury. At Clark College, he was studying accounting and business to become an "assistant manager" or "an accounting clerk." CABR (Butson) at 6.

Butson's prior experience working as the head of a family business and managing a trucking business surely required a reasonable level of proficiency at answering the phone and similar administrative tasks. Additionally, the completion of three years of undergraduate studies

12

and recently completing approximately six quarters of business and accounting classes is evidence that Butson could perform at least general office work. Offering no evidence to counter the reasonable conclusions that can be drawn from his prior work experience and education, substantial evidence does not exist to support an argument that Butson's "capabilities, training, and experience" would not enable him to do "light or sedentary work" such as answering phones. *Young*, 81 Wn. App. at 131.

To establish he was temporarily totally disabled, Butson needed to present evidence that he was physically unable, or did not have the requisite skills, to maintain employment in any kind of general work. *See e.g. Hunter*, 71 Wn. App. at 507; *see also Young*, 81 Wn. App. at 131. Butson failed to present such evidence. We hold that the trial court did not err in finding, as a matter of law, there was no substantial evidence or reasonable inference to support the claim that Butson was temporarily totally disabled.

D.    PRECLUSIVE EFFECT OF JUNE 4, 2010 ORDER

Butson also contends there is "an issue of fact as to whether Mr. Butson had a documented plan interruption that prevented him from participation in his vocational plan from June 4, 2010, through January 25, 201[1]." Br. of Appellant at 2. We do not consider this argument because Butson did not appeal the June 4, 2010 order that suspended his benefits for noncompliance, and the doctrine of res judicata precludes him from making the claim now. *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 538, 886 P.2d 189 (1994) ("If a party to a claim believes the Department erred in its decision, that party must appeal the adverse ruling. The failure to appeal an order, even one containing a clear error of law, turns the order into a final adjudication, precluding any reargument of the same claim."); *Chavez v. Dep't of Labor & Indus.*, 129 Wn. App. 236, 239, 118

No. 45928-1-II

P.3d 392 (2005) ("Under the Industrial Insurance Act, Title 51 RCW, an action or order by L&I becomes final when it is not appealed within 60 days"), *review denied*, 157 Wn.2d 1002 (2006).

We affirm the trial court's issuance of a CR 50 judgment as a matter of law finding Butson was not temporarily totally disabled from June 4, 2010 through January 25, 2011. We also accept Butson's concessions that he was not undergoing rehabilitative treatment and was medically fixed and stable as of January 25, 2011.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Sutton, J.

14