# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MAXIM HEALTHCARE SERVICES, INC. | No. 56503-0-II |
| Appellant/Cross-Respondent, | |
| v. | |
| ABIGAIL C. WOLFF, | UNPUBLISHED OPINION |
| Respondent/Cross-Appellant. | |

LEE, J. — After sustaining a workplace injury at Maxim Healthcare Services, Inc. (Maxim), Abigail C. Wolff filed an application for benefits under the Industrial Insurance Act, Title 51 RCW. The Board of Industrial Appeals (Board) concluded that Wolff was temporarily totally disabled from September 18, 2015, through February 21, 2019. The Board also concluded that Wolff was permanently totally disabled as of February 22, 2019.

On review of the Board's decision by the superior court, the court awarded Wolff time loss compensation for a temporary total disability from September 18, 2015, through February 21, 2019, but denied Wolff permanent disability benefits following the closure of Wolff's claim on February 22, 2019.

Maxim appeals the superior court's order, arguing that the court erred in its findings and conclusion that Wolff was temporarily totally disabled from September 18, 2015, through February 21, 2019. Wolff cross-appeals the same order, arguing that the superior court erred by concluding that Wolff was not permanently totally disabled as of February 22, 2019.

We hold that the superior court did not err in its findings supporting temporary total disability, nor did the superior court err in concluding that Wolff was temporarily totally disabled from September 18, 2015, through February 21, 2019. However, we hold that the superior court erred by concluding that Wolff was not permanently totally disabled as of February 22, 2019. Therefore, we affirm the superior court's order as it relates to temporary total disability, reverse the superior court's order as it relates to permanent total disability, and reinstate the Board's decision.

## FACTS

Wolff worked as a licensed practical nurse (LPN) for Maxim. Wolff was injured while performing her job on July 6, 2010. Wolff filed a claim for benefits under the Industrial Insurance Act on August 12. The Department of Labor and Industries (Department) accepted Wolff's claim and determined that Wolff was entitled to receive medical treatment and benefits.

On February 22, 2019, the Department ordered that time loss benefits were ended as paid through November 17, 2014. The Department closed Wolff's claim on February 22, 2019, made no award for permanent partial or total disability, and ordered that the Department would not pay for medical treatment after February 22, 2019.

A.    BOARD APPEAL

Wolff appealed to the Board of Industrial Insurance Appeals and requested time loss compensation from September 18, 2015, through February 22, 2019. Wolff also requested a pension due to a permanent disability as of February 23, 2019.

1.      Testimony

An industrial appeals judge heard live testimony from Wolff and one doctor, Dr. John T. Lloyd, on February 13, 2020.  The industrial appeals judge also reviewed testimony from the depositions of five other doctors.

a.      Live testimony—Wolff and Dr. Lloyd

Wolff testified that she went to high school then became certified as an LPN.  Wolff worked on and off as an LPN for 34 years.  Wolff worked for Maxim in 2010.

On July 6, 2010, Wolff was working in home care and taking care of an infant patient.  The patient's family engaged in a water fight, and Wolff participated.  The patient's uncle charged Wolff, chest bumped her, put his leg around her leg, came down on top of her, and slammed the back of her head onto the ground.  Wolff went into the fetal position and felt like she was going to pass out.  Wolff's head hurt very badly, especially behind her eyes.

Wolff went home and called Maxim.  Maxim told Wolff that she needed to go to a doctor and that she should not go to work the next day.  Wolff had a severe headache the next morning and went to a doctor's office.  Wolff underwent a computerized axial tomographic (CAT) scan, which was within normal limits.  Wolff was diagnosed with a concussion and sent home.  Wolff continued to complain of headaches and visual disturbances.  Wolff underwent a magnetic resonance imaging (MRI) test and a neurological examination, and both were within normal limits.

Wolff tried to go back to work.  When Wolff attempted to work, she only lasted a few days and had problems with lights and noise.  Around the first week of August 2010, Wolff communicated with a nurse practitioner, and the nurse practitioner recommended that Wolff stop working until she got evaluated.  Wolff has not been employed since that time.

Wolff testified that she has tried to work on projects, but her brain gets tired and she has to lie down after two to three hours. Wolff has a hard time focusing and concentrating. Wolff still gets intermittent headaches and gets physically very tired when the headaches happen. Wolff says her head routinely hurts at certain times of the day, but some days she does not get headaches. Wolff has tried to read but cannot get through one paragraph because her brain is tired. Wolff has someone else drive her around because she gets overwhelmed with traffic. Wolff described her symptoms in the present tense.

Wolff did not remember having a primary care doctor at the time of the injury, but Wolff started seeing Dr. Katherine Bumstead in 2011. For the first few years following the injury, Wolff saw Dr. Bumstead approximately every four months.

Dr. Lloyd testified that he is a clinical neuropsychologist and a board-certified psychotherapist. In April 2013, Dr. Lloyd saw Wolff to evaluate her for the Division of Disability Determination Services. Dr. Lloyd's evaluation took approximately one hour. Dr. Lloyd reviewed Wolff's medical history and did a mental status examination. The mental status examination included cognitive tasks and an evaluation of Wolff's dress and grooming. Based on Wolff's records and his own evaluation, Dr. Lloyd diagnosed Wolff with "a pain disorder with both psychological symptoms and general medical condition" and "a mood disorder related to her chronic pain associated with major depressive-like episodes." Admin. Rec. (AR) at 220. Dr. Lloyd did not diagnose Wolff with a cognitive disorder.

Dr. Lloyd testified that Wolff's pain three years after the injury was statistically unusual, but it was not unusual in the world he works in. Dr. Lloyd created a report that rated Wolff's

4

general level of function as a 60 on a scale of 0 to 100. Dr. Lloyd testified that this meant Wolff was having significant difficulty with daily living, let alone functioning in the work world.

Dr. Lloyd reviewed Wolff's records again in 2016 at Wolff's attorney's request, and his diagnoses did not change. Dr. Lloyd also testified that

> [i]n my world of psychology and pain, the window for pain is five years. If we cannot reduce that pain or take it away in five years, the probability of that pain going down spontaneously or even with receiving treatment is poor, very poor.
>
> In terms of a head injury, the open window is two years. When I saw [Wolff], the probability of improvement, spontaneous recovery in a brain injury, was already past and it was considered unlikely to change.
>
> The post-traumatic headache that keeps being referred to in the reports is consistent and one of the most frequent symptoms of mild traumatic brain injury.
>
> My conclusion is that this condition is unlikely to change.

AR at 228-29.

Dr. Lloyd also testified that he believed that Wolff was totally disabled from September 18, 2015, through February 22, 2019, and that Wolff was totally disabled into the foreseeable future. However, the industrial appeals judge sustained an objection to Dr. Lloyd's testimony on this matter because Dr. Lloyd was not qualified to certify total disability. The industrial appeals judge allowed Dr. Lloyd to testify on the matter only to preserve his answers for later review.

b.      Deposition testimony—Drs. Bumstead, Smith, Curcin, Chong, and Ward

Dr. Bumstead testified that she is a board-certified family practice physician. Dr. Bumstead treated Wolff for her head injury. At first, Dr. Bumstead saw Wolff every one to three months. Dr. Bumstead saw Wolff two to three times in more recent years.

Dr. Bumstead's clinical impression was that Wolff had been unable to work and continued to be unable to work. Dr. Bumstead stated that Wolff was at maximum medical improvement. However, Dr. Bumstead advised Wolff to continue treatment so Wolff could find some relief for her symptoms. Dr. Bumstead last saw Wolff in March 2019.

Dr. Craig Smith testified that he is a board-certified neurologist and has fellowship training in neuro-ophthalmology. Dr. Smith conducted an independent medical examination of Wolff in May 2016. Dr. Smith reviewed Wolff's medical records and did both a neuro-ophthalmologic exam and a general neurologic exam.

Dr. Smith testified that Wolff did not really meet the criteria to have had a concussion, but he did not dispute that she had related postconcussion syndrome. Dr. Smith also testified that Wolff's condition had "long since resolved" at the time he examined her and that concussion symptoms typically resolve in two to four months. AR at 445. Dr. Smith did not believe, from a neurologic standpoint, that Wolff's headaches would be disabling enough to keep Wolff from working. In his opinion, Wolff was capable of working from September 18, 2015, through February 22, 2019, and was capable of working as of February 23, 2019.

Dr. Aleksandar Curcin, a board-certified orthopedic surgeon, conducted an independent medical evaluation of Wolff in October 2018. Following a physical examination, Dr. Curcin formed an opinion that there was no objective evidence that Wolff has any physical limitations or restrictions. Dr. Curcin testified that, from his perspective as an orthopedic surgeon, he did not think Wolff had any restrictions on working from September 18, 2015, through February 22, 2019, or as of February 23, 2019.

Dr. Dennis Chong, a board-certified physiatrist, works as an independent medical examiner for the Department and evaluated Wolff in March 2017 and November 2018. In March 2017, Dr. Chong believed that Wolff's closed head injury trauma had resolved. Dr. Chong also believed that Wolff's postconcussion symptoms should have all resolved. Dr. Chong testified that symptoms from mild traumatic brain injuries or concussions would resolve in "nearly all people within one year, and at the very most, one to one and a half years." AR at 479. Dr. Chong did not believe Wolff had any work restrictions in March 2017.

When Dr. Chong examined Wolff in November 2018, Dr. Chong did not see any substantial changes, and his diagnoses did not change. Dr. Chong did not believe there was any objective basis for work restrictions in November 2018. Dr. Chong testified that, in his opinion, Wolff had no work restrictions from September 18, 2015, through February 22, 2019, nor as of February 23, 2019.

Dr. Michael Ward, a board-certified psychiatrist, performed an independent psychiatric evaluation of Wolff in October 2019. Dr. Ward reviewed Wolff's records and asked Wolff about her symptoms. Dr. Ward also conducted a mental status exam, which was based on his own observations throughout the examination. Dr. Ward testified that, from his psychiatric perspective, he did not believe Wolff had any restrictions preventing her from working from September 18, 2015, through February 22, 2019. Dr. Ward also testified that, from his psychiatric perspective, he did not believe Wolff had any restrictions due to her injury as of February 23, 2019.

2.      Board Decision

The industrial appeals judge issued a proposed decision and order that reversed the Department's closure order, awarding Wolff time loss compensation and a pension. The industrial

appeals judge concluded that Wolff was temporarily totally disabled from September 18, 2015, through February 22, 2019. The industrial appeals judge also concluded that Wolff was permanently totally disabled as of February 23, 2019.

Maxim filed a petition for review, which the Board granted. The Board issued a decision and order agreeing with the industrial appeals judge. The Board concluded that Wolff was temporarily totally disabled from September 18, 2015, through February 21, 2019.[1] The Board also concluded that Wolff was permanently totally disabled as of February 22, 2019. Based on these conclusions, the Board reversed the Department's order closing Wolff's claim. The Board remanded the matter to the Department to issue an order requiring Maxim to pay temporary total disability compensation benefits from September 18, 2015, through February 21, 2019, and to pay permanent total disability compensation benefits to Wolff effective February 22, 2019.

B.    SUPERIOR COURT APPEAL

Maxim appealed to the superior court. The superior court read the transcripts and depositions from the Board's review and heard oral argument. Following its review, the superior court issued a memorandum opinion noting that there were conflicting opinions as to Wolff's injury, but it seemed reasonable that Wolff easily could have suffered mild brain trauma as articulated by Dr. Lloyd. The memorandum opinion stated that Dr. Chong's and Dr. Smith's testimony was credible and persuasive, and the superior court believed that any symptoms from a

---

[1] The industrial appeals judge, Board, and superior court made conflicting findings regarding whether the final day of Wolff's temporary total disability was February 21 or 22. The record does not explain this discrepancy. Neither party raises this issue on appeal, so this opinion does not address the date discrepancy. Because we review the superior court's order and the superior court's order uses February 21 as the final day of Wolff's temporary total disability, this opinion proceeds with February 21 as the final day of Wolff's temporary total disability.

mild traumatic brain injury would have long since resolved. The superior court's memorandum

opinion also included a footnote stating:

> Other than testimony from Dr. Chong that the symptoms caused by a mild brain trauma should have subsided within one to one and one half years, and Dr. Smith's testimony that any symptoms would not have lasted six years, there was no other specific testimony regarding the maximum duration of such symptoms. As such the court will give Ms. Wolff the benefit of the doubt with regard to the finding of temporary total disability.

Clerk's Papers (CP) at 23.

The superior court's memorandum opinion affirmed the Board's conclusion that Wolff was

temporarily totally disabled from September 18, 2015 through February 22, 2019. However, the

memorandum opinion reversed the Board's conclusion that Wolff was permanently totally

disabled as of February 23, 2019.[2]

The superior court then entered a written Findings of Fact, Conclusions of Law, Judgment

and Order. The superior court found in finding of fact 1.2 that a preponderance of evidence

supported the Board's findings of fact 1 through 7. The Board's findings 1 through 7 were:

1. On August 15, 2019, an industrial appeals judge certified that the parties agreed to include the Jurisdictional History in the Board record solely for jurisdictional purposes.

2. Abigail C. Wolff is 65 years old. She graduated from high school and obtained a certificate as a licensed practical nurse. Ms. Wolff thereafter worked as an LPN for 34 years. She has no other training or work experience.

3. On July 6, 2010, Ms. Wolff had been working for a family whose infant daughter required constant nursing attention for a year. When she took the

---

[2] Maxim filed a premature notice of appeal of the memorandum opinion, and Wolff filed a premature notice of her cross-appeal. This court issued a letter stating that the appeals were filed prematurely and that the case would only continue if the parties obtained a final order from the superior court pertaining to the memorandum opinion.

child outside for fresh air, family members playfully attacked her with water guns and such. Ms. Wolff eventually picked up a hose to retaliate against a 5-foot, 6-inch, 200-pound uncle, who chest-bumped her and knocked her to the ground, where she struck her head on the hard surface of the lawn. He landed atop her.

4. Ms. Wolff's industrial injury proximately caused her to sustain a closed head injury and a mild traumatic brain injury.

5. As a result of the conditions proximately caused by her industrial injury Ms. Wolff had no energy, she was impatient, had no coping skills, could not focus or concentrate, was disorganized, and couldn't complete tasks, and a majority of the time, she experienced headaches at the same spot where her head hit the ground from September 18, 2015, through February 22, 2019[].

6. The conditions caused by Ms. Wolff's industrial injury were medically fixed and stable and had reached maximum medical improvement as of February 22, 2019.

7. From September 18, 2015, through February 21, 2019, in view of her age, education, training, and work experience, and the effects of her industrial injury, Ms. Wolff was temporarily unable to obtain or perform any form of gainful occupation in the competitive labor market on a reasonably continuous basis.

AR at 11-12 (footnote omitted).

The superior court also made the following conclusions of law:

2.1 The Board of Industrial Insurance Appeals has jurisdiction over the parties and subject matter in this appeal.

2.2 The court adopts as its Conclusions of Law, and incorporates by this reference, the Board's Conclusions of Law Nos. 1 through 2 of the August 31, 2020 Final Order adopted by the Board of Industrial Insurance Appeals.

2.3 Ms. Wolff is not entitled to permanent total disability benefits after the date of the Department's closing order of February 22, 2019.

2.4 Ms. Wolf[f]'s claim is closed effective February 22, 2019.

CP at 8. The Board's conclusions of law adopted by the superior court were:

1.      The Board of Industrial Insurance Appeals has jurisdiction over the parties and subject matter in this appeal.

2.      From September 18, 2015 through February 21, 2019, Ms. Wolff was temporarily totally disabled as a result of conditions caused by her industrial injury within the meaning of RCW 51.32.090.

AR at 12.

Maxim appeals, and Wolff cross-appeals.

ANALYSIS

In industrial insurance cases, we review the superior court's decision, not the Board's order. RCW 51.52.140; *Dillon v. Dep't of Lab. & Indus.*, 186 Wn. App. 1, 6, 344 P.3d 1216 (2014), *review denied*, 183 Wn.2d 1021 (2015). We review the superior court's decision in the same way we review other civil cases. RCW 51.52.140.

At the superior court, the party challenging the Board's decision has the burden of proving it is not prima facie correct. *Street v. Weyerhaeuser Co.*, 189 Wn.2d 187, 205, 399 P.3d 1156 (2017). "[T]he superior court presumes the correctness of the Board's decision and can reverse it only upon finding, by a preponderance of the evidence, that the Board's 'findings and decision are erroneous.'" *Dep't of Lab. & Indus. v. Rowley*, 185 Wn.2d 186, 200, 378 P.3d 139 (2016) (quoting *Gorre v. City of Tacoma*, 184 Wn.2d 30, 36, 357 P.3d 625 (2015)).

However, our review is limited to examining the record to see if substantial evidence supports the superior court's findings after its de novo review and whether the superior court's conclusions of law flow from its findings. *Street*, 189 Wn.2d at 205. Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the stated premise is true.

*Zavala v. Twin City Foods*, 185 Wn. App. 838, 859, 343 P.3d 761 (2015). We view the evidence in the light most favorable to the prevailing party at the superior court. *Street*, 189 Wn.2d at 205.

"We do not reweigh the evidence." *Richardson v. Dep't of Lab. & Indus.*, 6 Wn. App. 2d 896, 903, 432 P.3d 841 (2018), *review denied*, 193 Wn.2d 1009 (2019). And credibility determinations are solely for the trier of fact. *Zavala*, 185 Wn. App. at 869. Credibility determinations remain solely for the trier of fact even when the superior court read a transcript instead of watching and hearing witnesses. *Id.*

We may consider the superior court's memorandum opinion as a supplementation of its formal findings of fact and conclusions of law. *Id.* at 859. We review the superior court's memorandum opinion, findings and conclusions, and judgment as a whole. *Id*.

A.     TEMPORARY TOTAL DISABILITY

Maxim argues that the superior court erred by making finding of fact 1.2 and conclusion of law 2.2. Finding of fact 1.2 states, "A preponderance of evidence supports the Board's Findings of Fact Nos. 1 through 7." CP at 7. Conclusion of law 2.2 states, "The court adopts as its Conclusions of Law, and incorporates by this reference, the Board's Conclusions of Law Nos. 1 through 2 of the August 31, 2020 Final Order adopted by the Board of Industrial Insurance Appeals." CP at 8. We disagree.

1.     Findings of Fact

Maxim challenges the superior court's finding of fact 1.2, which states that a preponderance of evidence supports the Board's findings of fact 1 through 7. Maxim fails to provide any argument with regard to the Board's findings of fact 1-6. Therefore, Maxim's assignment of error to the superior court's finding 1.2 as it relates to the Board's findings of fact

1-6 are waived. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

The Board's finding of fact 7 states:

From September 18, 2015, through February 21, 2019, in view of her age, education, training, and work experience, and the effects of her industrial injury, Ms. Wolff was temporarily unable to obtain or perform any form of gainful occupation in the competitive labor market on a reasonably continuous basis.

AR at 12.

Here, the testimony from Wolff, Dr. Bumstead,[3] and Dr. Lloyd[4] supports a finding that Wolff was unable to work on a reasonably continuous basis from September 18, 2015, through February 21, 2019. Wolff testified in February 2020 about her pain, fatigue, and inability to focus, concentrate, read, or drive. Wolff testified about these symptoms as occurring in the present tense, which indicates that she continued to experience the symptoms in February 2020. Dr. Bumstead saw Wolff regularly for several years following Wolff's 2010 injury, saw Wolff less often in later years, and testified that Wolff was and continued to be unable to work. Dr. Lloyd saw Wolff in

---

[3] Maxim argues that Dr. Bumstead's opinion should not be given special consideration as Wolff's attending physician because Dr. Bumstead was unprepared for her deposition. Nothing in the record indicates that the superior court gave Dr. Bumstead's opinion special consideration. To the extent Maxim is arguing that we should reweigh the evidence or evaluate Dr. Bumstead's credibility, we do not reweigh evidence or make credibility determinations. *See Richardson*, 6 Wn. App. 2d at 903; *Zavala*, 185 Wn. App. at 869.

[4] Maxim argues that Dr. Lloyd's opinion should be given little to no weight because of the method of his examination, a perceived lack of record review, and because Dr. Lloyd's status as a psychologist precludes him from certifying total disability. We note that while Dr. Lloyd answered questions regarding Wolff's total disability, the record shows that Dr. Lloyd's answers on total disability were only given as part of a sustained objection. And to the extent Maxim is arguing that we should reweigh the evidence or evaluate Dr. Lloyd's credibility, we do not reweigh evidence or make credibility determinations. *See Richardson*, 6 Wn. App. 2d at 903; *Zavala*, 185 Wn. App. at 869.

2013 and reviewed Wolff's records again in 2016. Dr. Lloyd testified regarding Wolff's continuing chronic pain and difficulties functioning in daily life.

The superior court did note that Dr. Bumstead "failed to offer any explanation to support" her testimony that Wolff was and continued to be unable to work. CP at 23. And the superior court acknowledged the conflicting evidence from experts regarding Wolff's temporary total disability but found it reasonable that Wolff "could have easily suffered some kind [of] mild brain trauma as articulated by Dr. Lloyd" after hitting her head on the ground. CP at 23. This statement makes it apparent that the superior court found Dr. Lloyd more persuasive and credible as to the time period from September 18, 2015, through February 21, 2019. We do not reweigh evidence or review credibility determinations. *See Richardson*, 6 Wn. App. 2d at 903; *Zavala*, 185 Wn. App. at 869.

Wolff's, Dr. Bumstead's, and Dr. Lloyd's testimony was evidence sufficient to persuade a fair-minded, rational person that Wolff was "temporarily unable to obtain or perform any form of gainful occupation in the competitive labor market on a reasonably continuous basis" from September 18, 2015, through February 21, 2019. AR at 12. Therefore, substantial evidence supports the superior court's finding as it relates to the Board's finding of fact 7. *See Zavala*, 185 Wn. App. at 859. In turn, the superior court did not err in making finding of fact 1.2 as it relates to finding of fact 7.

2. Conclusions of Law

Maxim challenges the superior court's conclusion of law 2.2, which states that "[t]he court adopts as its Conclusions of Law, and incorporates by this reference, the Board's Conclusions of

Law Nos. 1 through 2 of the August 31, 2020 Final Order adopted by the Board of Industrial Insurance Appeals." CP at 8.

The Board's conclusion of law 1 states that "[t]he Board of Industrial Insurance Appeals has jurisdiction over the parties and subject matter in this appeal." AR at 12. Maxim does not provide argument on this conclusion. Therefore, Maxim's assignment of error to the superior court's conclusion of law 2.2 as it relates to the Board's conclusion of law 1 is waived. *See Cowiche Canyon*, 118 Wn.2d at 809.

The Board's conclusion of law 2 states that "[f]rom September 18, 2015 through February 21, 2019, Ms. Wolff was temporarily totally disabled as a result of conditions caused by her industrial injury within the meaning of RCW 51.32.090." AR at 12.

RCW 51.32.090(1) provides that individuals who are temporarily totally disabled shall receive payments so long as the total disability continues. RCW 51.32.090 does not define "temporary total disability." However, our Supreme Court has held that "temporary total disability" means the worker is temporarily incapable of performing any work at any gainful employment. *Hubbard v. Dep't of Lab. & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). "Temporary total disability ends when the claimant's condition becomes fixed and stable or he is capable of reasonably continuous employment at any kind of generally available work." *Butson v. Dep't of Lab. & Indus.*, 189 Wn. App. 288, 299, 354 P.3d 924 (2015) (emphasis omitted).

As discussed above, there is substantial evidence to support the superior court's finding of fact 1.2 that a preponderance of evidence supports the Board's finding of fact 7 that

> [f]rom September 18, 2015, through February 21, 2019, in view of her age, education, training, and work experience, and the effects of her industrial injury,

15

Ms. Wolff was temporarily unable to obtain or perform any form of gainful occupation in the competitive labor market on a reasonably continuous basis.

AR at 12.

Because a person is temporarily totally disabled when they are temporarily incapable of performing any work at any gainful employment, the superior court's conclusion of law 2 that Wolff was temporarily totally disabled from September 18, 2015, through February 21, 2019, flows from the superior court's finding regarding Wolff's temporary inability to obtain or perform any form of gainful employment on a reasonably continuous basis on those same dates. *See Hubbard*, 140 Wn.2d at 43. Further, the conclusion that Wolff's temporary total disability was a result of Wolff's industrial injury flows from the superior court's finding of fact 7 regarding the "effects of [Wolff's] industrial injury" causing Wolff's temporary inability to obtain or perform work. AR at 12. Therefore, the superior court's findings of fact support its conclusion of law 2.2 as it relates to conclusion of law 2.

We affirm the superior court's order determining Wolff's temporary total disability.

B.      PERMANENT TOTAL DISABILITY

Wolff argues that the superior court erred in conclusion of law 2.3, which states that "Wolff is not entitled to permanent total disability benefits after the date of the Department's closing order of February 22, 2019."[5] CP at 8. We agree.

"Permanent total disability" is a "condition permanently incapacitating the worker from performing any work at any gainful occupation." RCW 51.08.160. "The definition of permanent

---

[5] Wolff also assigns error to the superior court's conclusion 2.4 that "Wolf[f]'s claim is closed effective February 22, 2019," but Wolff provides no argument on this issue. CP at 8. Therefore, the assignment of error is waived. *See Cowiche Canyon*, 118 Wn.2d at 809.

total disability supplied by case law involves both a medical aspect—the physical impairment itself, and an employability aspect—the impairment's effect on wage earning capacity." *Young v. Dep't of Lab. & Indus.*, 81 Wn. App. 123, 130, 913 P.2d 402, *review denied*, 130 Wn.2d 1009 (1996).

Here, the superior court made no findings regarding Wolff's permanent ability or inability to perform any work at any gainful occupation as of February 22, 2019.[6] Without this finding, any conclusion that Wolff was not permanently totally disabled is unsupported. *See* RCW 51.08.160; *Young*, 81 Wn. App. at 130. Therefore, the superior court's conclusion of law 2.3 that "Wolff is not entitled to permanent total disability benefits after the date of the Department's closing order of February 22, 2019" does not flow from any of the superior court's findings. CP at 8. Further, to reverse the Board's decision that Wolff was permanently totally disabled, the superior court was required to find by a preponderance of the evidence that the Board's findings and decision on that issue were erroneous. *See Rowley*, 185 Wn.2d at 200. The superior court made no such finding

---

[6] The superior court stated in its memorandum opinion that it found Dr. Chong and Dr. Smith to be credible in their testimony that Wolff's symptoms had long since resolved. However, the superior court did not include this statement in its formal findings and conclusions, nor did the superior court make any formal finding of fact in support of its conclusion that Wolff was not permanently totally disabled. While we may consider memorandum opinions as "supplementation[s]" to a superior court's formal findings and conclusions, we decline to consider a statement made in a memorandum opinion as a substitute for a formal finding where the superior court made no formal finding in support of a conclusion. *See Zavala*, 185 Wn. App. at 859. Moreover, the absence of a finding of fact in favor of the party with the burden of proof as to a disputed issue is to be interpreted as a finding against that party. *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 524, 22 P.3d 795 (2001). Maxim had the burden of proof at the superior court, so the absence of a formal finding of fact on the issue of permanent disability must be construed against Maxim. *See Weyerhaeuser*, 189 Wn.2d at 205.

No. 56503-0-II

in its written findings, conclusion, and judgment. Accordingly, we reverse the superior court's order as it relates to Wolff's permanent total disability.[7]

## CONCLUSION

We affirm the superior court's order as it relates to temporary total disability. However, we reverse the superior court's order as it relates to permanent total disability and reinstate the Board's decision.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, C.J.

Cruser, J.

___

[7] In her arguments challenging the superior court's conclusion that she was not permanently totally disabled, Wolff contends that a footnote in the superior court's memorandum opinion is an unsupported finding of fact. But the alleged finding of fact in the footnote relates to the superior court's finding of temporary total disability, which Wolff does not appeal. Because we reverse the superior court's conclusion that Wolff was not permanently totally disabled, we do not further address Wolff's challenge to the alleged unsupported finding of fact in the superior court's footnote found in its memorandum opinion.